Filed 4/24/13  Auffret v. Capitales Tours CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OLIVIER AUFFRET, et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>CAPITALES TOURS, S.A., et al.,<br><br>  Defendants and Respondents. | H037551<br>(Monterey County<br> Super. Ct. Nos. M99601, M104580,<br> M110557, M111913) |

In 2009 a bus carrying 34 French tourists and their guide overturned, killing four (plus the driver) and injuring many others.  Plaintiffs sued multiple defendants for negligence, wrongful death, and related causes of action, along with a claim of strict liability under the French Code of Tourism. After two years of discovery and settlements with some of the defendants, the remaining three defendants sought a stay or dismissal under the doctrine of forum non conveniens, on the ground that France was a more suitable forum to try the plaintiffs' claims.  The trial court stayed the action pending acceptance of jurisdiction by a French court.

On appeal, plaintiffs contend that the court's ruling was erroneous because the public and private interest factors compelled retention of the case in California, where the accident occurred and where the victims received medical treatment by emergency and hospital personnel.  After considering the suitability of France as an alternative forum and

reviewing the trial court's balancing of the requisite facts, we find no abuse of discretion and therefore must affirm the order.

## *Background*[1]

The accident that led to this pending litigation occurred on April 28, 2009, on Highway 101 in Monterey County. While driving across a bridge the bus operator, John Egnew, lost control of the vehicle, which collided with the right and left bridge rails and eventually rolled onto its side. Eighteen of the occupants were ejected; several of them were thrown over the bridge onto the railroad tracks below. Egnew and four passengers were killed, 21 were severely injured, and 10 sustained minor injuries.

On June 22, 2009, the first of four lawsuits, *Auffret et. al. v. Capitales Tours et al.*, was filed in superior court by most of the passengers or their families, naming 12 corporate and individual defendants. The first amended complaint, filed March 25, 2010, asserted claims by 26 plaintiffs against Capitales Tours; Contact Amerique; Egnew's estate; and Weeks Enterprises, Inc., doing business as Orion Pacific. These plaintiffs alleged causes of action for strict liability under Article 211.17 of the French Code of Tourism; wrongful death; negligence (against Orion Pacific and Egnew, its employee); vicarious liability (respondeat superior) against Orion Pacific for Egnew's negligent operation of the bus; negligence against the "Tour Operator defendants"; loss of consortium; and breach of contract. Capitales Tours filed a cross-complaint against Orion Pacific, Egnew's estate, and three new parties, including the bus manufacturer, Prevost (U.S.), Inc.

On April 26, 2011, the same plaintiffs filed a new action, *Auffret et al. v. Silvy Joncas, et al.* The parties thereafter stipulated to an order consolidating that case with the

---

[1] We describe the underlying events as reported in plaintiffs' complaint and in the summary provided by the California Highway Patrol's investigation team.

original *Auffret* lawsuit and two others arising from the same accident (*Montmayeur et al. v. Capitales Tours, et al.* and *Dangoisse et al. v. VPG, et al.*).

Meanwhile, on April 8, 2011, the superior court granted the motion of Orion Pacific, the tour bus charter company that had employed Egnew, to determine that it had reached a good faith settlement with plaintiffs in all of the consolidated actions. Prevost also settled, and both defendants, along with Egnew's estate and a number of other defendants and cross-defendants, were dismissed. Only Capitales Tours, Contact Amerique, and Silvy Joncas, Contact Amerique's sole shareholder, remain as defendants in the consolidated action. Capitales Tours is a French company, while Contact Amerique and Joncas are Canadian.

On May 27, 2011, Capitales Tours, joined by Contact Amerique and Joncas, moved to dismiss or, alternatively, stay the action under the doctrine of forum non conveniens. Citing Code of Civil Procedure section 410.30, defendants asserted that France was a suitable alternative forum and that both public and private interest factors supported moving the litigation to France. Both Joncas and the chairman of Capitales Tours declared that if the court granted the motion, defendants would submit to the jurisdiction of the French Civil Tribunal courts.

Plaintiffs urged the trial court to deny the motion because they would "suffer untold hardship and a grossly unjust result" if they were forced to try the case in France. Plaintiffs complained that defendants had waited more than two years to bring the motion. During that period they had obtained information they would not have learned in France, by taking unfair advantage of discovery procedures in California that were unavailable in French proceedings, including depositions, written interrogatories, and requests for admissions. Most of the material witnesses, particularly the emergency and hospital personnel, were in California, and they would be available to testify. In addition, most of the documents, including medical records and deposition transcripts, were in California. Plaintiffs estimated that they would incur between $405,000 and $810,000 in

3

expenses just to translate these documents from English to French. They emphasized that the emergency personnel and treating hospitals "would very likely receive NOTHING" if the cases were transferred to France, and most plaintiffs themselves would receive nothing beyond the $10 million they had secured in the prior settlements, leaving them without the resources to pay more than $5 million in outstanding medical bills. Plaintiffs thus urged the court to defer to their choice of forum, as defendants had not shown that California was a seriously inconvenient forum. California would offer speedier resolution, with no undue burden to the Monterey County court. Because this would be a damages-only case, given the strict-liability nature of the French cause of action, it was the California witnesses who would be potential material witnesses at trial, and access to the bus itself would likely be necessary. Plaintiffs also suggested that the state and county would benefit by seeing that hospitals and emergency care providers were paid for their services.

In support of their opposition, plaintiffs submitted a declaration by Yves Hudina, counsel for many of the plaintiffs in France. Hudina stated that (1) trial would probably require three to five more years to conclude; (2) a "significant number" of the plaintiffs would have no remedy in France; (3) it was highly unlikely that plaintiffs would be able to recover the cost of their medical treatment in the United States; and (4) Capitales Tours was in a position to "exploit" information it had obtained from plaintiffs in discovery, information that was "simply not available in France." Finally, Hudina corrected a misstatement by Capitales Tours's counsel, Gerard Honig, who had represented that the Foustol and Tranchand plaintiffs had obtained an "interim judgment." In fact, Hudina explained, this was merely an interim order requiring travel agencies and insurers to pay "some small sums of money to these plaintiffs from which they were ordered to pay the medical expert appointed by the court." Neither of these couples had filed any claim against Capitales Tours.

4

The superior court, however, found defendants' position persuasive. Following the analytical framework of *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, the trial judge reasoned that France was a suitable alternative forum: even though there might be "lesser remedies" there, compensation was still available under the French Tourism Code, and the suitability of an alternative forum did not require equivalent relief. The court also found both public and private interest factors to favor France: California would not necessarily offer a speedier resolution; testimony of California witnesses would not inevitably be required in order to prove damages under the French system; translation costs for medical records would still be incurred if the trial were held in California; and this complex, multi-plaintiff case would contribute to court congestion, particularly in light of recent court budget cuts. The judge further believed that plaintiffs had underestimated the amount of trial time it would take in Monterey County, given the questionable premise that defendants would concede liability and litigate only damages. On the contrary, the court anticipated multiple summary adjudication motions.

Most compelling, the court reasoned, were the facts that none of the plaintiffs or the remaining defendants was a California resident and that plaintiffs were seeking application of the French Tourism Code in their primary cause of action, which, along with translation expenses, would be "logistically challenging." The court was not convinced that plaintiffs would be prejudiced by information defendants had acquired in discovery, since both sides had conducted extensive discovery. Nor would the medical providers be prejudiced; the settlements provided for payment to all of these lienholders. Addressing the general economic picture in the community, the court expressed reluctance to "call in jurors who are under economic duress most likely . . . [and] ask

5

them to expend lots of time and for the Court to continue to spend lots of time for a case in which California really has hardly any interest left."[2]

Thus, the court concluded, "This would seem to be the quintessential instance of a California jury deciding a case in which the local community has little concern.  France's competing interest in this litigation clearly outweighs California's."  In its ensuing order on September 21, 2011, the court stayed the consolidated actions for one year.  If France were to accept jurisdiction by that time, the actions would be dismissed.  Plaintiffs filed a timely appeal from this order, pursuant to Code of Civil Procedure section 904.1, subdivision (a)(3).

<em>Discussion</em>

*1.  Scope of Review*

Forum non conveniens is an equitable doctrine allowing a court to decline to exercise its jurisdiction over a case when it determines that the case " 'may be more appropriately and justly tried elsewhere.' " (*Stangvik v. Shiley Inc.*, *supra*, 54 Cal.3d 744, 751 (*Stangvik*).)  The Legislature has sanctioned the application of this doctrine in Code of Civil Procedure section 410.30, subdivision (a),[3] which states:  "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."  As explained in the Judicial Council's comment to this section, the provision "authorizes a court to decline to exercise its jurisdiction in appropriate instances on the ground that the plaintiff has unfairly or unreasonably invoked the jurisdiction of an inconvenient forum."

---

[2] Plaintiffs' counsel responded to this comment by asserting that plaintiffs would waive a jury.

[3]  All further statutory references are to the Code of Civil Procedure unless otherwise specified.

The Supreme Court in *Stangvik* set forth a two-step analysis for a court considering a forum non conveniens motion. The court "must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik*, *supra*, 54 Cal.3d at p. 751, citing *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 259-261 (*Piper*) and *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 507-509; see also *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1463-1464.)

The burden of proof is on the defendant, as the party asserting forum non conveniens. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) On appeal, we review the ultimate ruling for abuse of discretion, and the lower court's ruling is entitled to "substantial deference." (*Ibid*.) However, the "threshold determination"-- the suitability of the alternative forum -- is examined de novo. (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1528, quoting *Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036; *Roman v. Liberty University* (2008) 162 Cal.App.4th 670, 683; see also *Stangvik*, *supra*, 54 Cal.3d at p. 752, fn. 3 [suitability question is not discretionary inquiry].) The second step entails a balancing of the private and public interest factors, which "must be applied flexibly, without giving undue emphasis to any one element." (*Stangvik*, *supra*, 54 Cal.3d at p. 753 & fn. 4.) The trial court's balancing

7

process "is entitled to substantial deference." (*Roulier v. Cannodale* (2002) 101 Cal.App.4th 1180, 1189; *Chong v. Superior Court, supra*, 58 Cal.App.4th at p. 1037.)

2. *Timeliness of Motion*

Before considering the *Stangvik* factors, we address plaintiffs' assertion that defendants' motion was prejudicially untimely. Comparing this case to *Martinez v. Ford Motor Co.* (2010) 185 Cal.App.4th 9 (*Martinez*), plaintiffs contend that defendants took advantage of two years of discovery, following procedures unavailable in France, to obtain evidence they will now be able to use against plaintiffs, evidence they would not otherwise have had in the French court system. Plaintiffs do not identify the specific evidence to which they attribute prejudice; they rely on Yves Hudina's declaration, which generally stated that Capitales Tours possesses knowledge enabling it to "fashion arguments to limit or reduce awards to the plaintiffs, thus giving Capitales Tours an unfair advantage if these cases were to be transferred to France."

In *Martinez,* the occupants of a Ford Explorer suffered a rollover accident while traveling in Mexico. The survivors and the heirs and estates of two passengers sued Ford Motor Company (Ford), the Ford dealership in San Diego where the vehicle was purchased, the tire manufacturer, and the San Diego tire company that had sold the tires. The two California defendants defaulted. The remaining defendants, Ford and the tire manufacturer, obtained a transfer of the case to Los Angeles and then conducted extensive discovery, most of which could not have been obtained in Mexico. The appellate court, reversing the grant of defendants' forum non conveniens motion, found the "inequity of respondents' pretrial maneuvers" to be "especially pronounced," rejecting Ford's claim that it was reasonably unaware of the occupants' nationality until they received discovery. (*Id*. at p. 19.) Respondents knew, the court held, "or had reason to know, at the time they were served, of the possible suitability of Mexico as a forum more convenient than California for trying the case. They did nothing, however, with that knowledge for 18 months. Instead, they affirmatively moved the case to Los Angeles

8

[County] Superior Court, where they took extensive discovery beyond the scope of that needed to establish the basis of a motion for forum non conveniens." (*Id*. at p. 21.)

The trial court here distinguished *Martinez* by noting that the transfer to Los Angeles was a pre-trial maneuver that had not occurred in this case; this distinction weakened plaintiffs' assertion that Capitales Tours was attempting to gain an unfair advantage. The court also expressed the view that it would have been "fruitless" to move for dismissal while Orion Pacific and Prevost were still involved as defendants. As trial in California seemed inevitable, reciprocal discovery took place. Thus, the court declined to impose a penalty on defendants for the delay in bringing the motion.

We cannot agree with plaintiffs that the court's ruling on the timeliness of the motion must be overturned. As the First District, Division Five observed in *Britton v. Dallas Airmotive, Inc.* (2007) 153 Cal.App.4th 127, 135, "it may be necessary to conduct discovery to develop the factual underpinnings of a forum non conveniens motion. [Citation.] Further, to retain a case for the entire duration of the litigation because the lack of connection to California was unclear at the outset would impair the state's interest in avoiding burdening courts and potential jurors with litigation in which the local community has little concern." Whether Capitales Tours engaged in "pretrial maneuvers" designed to secure a procedural and evidentiary advantage was a factual issue for the trial court, not this court, to make. The court properly found that the timing of the motion following discovery did not amount to an unfair litigation strategy comparable to that of the defendants in *Martinez*. Plaintiffs have presented no evidentiary basis for reversal on this ground.

*3. Suitability of France as an Alternative Forum*

"The availability of a suitable alternative forum is critical." (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 435.) An alternative forum will be found suitable where an action " 'can be brought,' although not necessarily won. There is no balancing of interests in this decision, nor any discretion to be

9

exercised." (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132; accord, *American Cemwood Corp. v. American Home Assurance Co.* , *supra*, 87 Cal.App.4th at p. 437 [forum is generally suitable "if there is jurisdiction and no statute of limitations bar to hearing the case on the merits"].) That California provides a more favorable or "meaningful" remedy, or that recovery is more difficult in the alternative forum, does not make the alternative forum unsuitable. (*Roulier v. Cannondale*, *supra*, 101 Cal.App.4th 1187; *Stangvik*, *supra*, 54 Cal.3d at p. 754, fn. 5.) Only if the foreign jurisdiction offers "no remedy at all" does the law of that jurisdiction contravene its suitability. (*Guimei v. General Elec. Co.* (2009) 172 Cal.App.4th 689, 696-697; accord, *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1530.) This no-remedy exception is applied rarely, "such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." (*Shiley Inc. v. Superior Court*, *supra*, 4 Cal.App.4th at pp. 133-134; accord, *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1188-89; *Guimei v. General Electric Co., supra*, 172 Cal.App.4th at p. 697.) If the exception were broadened, "it would undermine important public interests, particularly the interest in avoiding congesting California courts and overburdening California taxpayers. The law does not require that California courts become the depository for nonresident plaintiffs' cases involving causes of action [that] are not recognized or would not be successful in those plaintiffs' home [forum]." (*Shiley Inc. v. Superior Court*, *supra*, 4 Cal.App.4th at p. 134; accord, *Hahn v. Diaz-Barba, supra,* 194 Cal.App.4th at p. 1189.)

Here, defendants have agreed to subject themselves to the jurisdiction of the French courts, and a remedy is available, though it may be less favorable than plaintiffs could obtain in superior court in California. This is enough to permit a stay. The trial court did acknowledge the possibility that the French court might not assume jurisdiction, by only staying, not dismissing, the matter in Monterey County. That ruling was not in itself erroneous. If the French courts finally decline to take jurisdiction over Capitales

10

Tours's lawsuit,[4] it will be obvious that France is not a suitable alternative forum for plaintiffs' action, and we presume that the Monterey County Superior Court will lift the stay and reset the matter for trial. (See *Stangvik*, *supra*, 54 Cal.3d at p. 752, quoting Judicial Council comment to section 410.30 [" 'the action will not be dismissed unless a suitable alternative forum is available to the plaintiff' "]; see also *Shiley Inc. v. Superior Court*, *supra*, 4 Cal.App.4th at pp. 132-133 [there must be jurisdiction over the defendant and no bar of a statute of limitations].) Given the tentative nature of the procedural posture before us, however, we must conclude that at this point there is no bar to a finding that France is a suitable forum.

*4. Private and Public Interest Factors*

Plaintiffs assert an abuse of discretion and lack of evidence to support the trial court's determination that the second step of the *Stangvik* analysis favored moving the case to France. Plaintiffs vigorously argue that their choice of forum is entitled to great weight, and that defendants failed to overcome this "presumption" by showing that California would be a "seriously inconvenient forum."

The two premises of this argument, however, are both flawed. First, when the plaintiff is not a California resident, his or her choice of forum is not entitled to great weight. "Where . . . the plaintiff resides in a foreign country, *Piper* holds that the

---

[4] After the Monterey court's ruling, Capitales Tours initiated suit in Paris, naming multiple defendants, including travel agencies as well as the accident victims. Upon a challenge brought by the victims, the superior court of Paris ("Tribunal de Grande Instance de Paris") declined to assume jurisdiction over the action, ruling that "*litispendance*" barred the suit against the victims, because the action pending in California involved the same subject and preceded the current suit in France. (Jud'l notice motn 8/23/12, t. 1, p. 18) The appellate court, the Cour d'Appel de Paris, reversed the lower court's ruling. The matter is proceeding through the appellate process. We take judicial notice of the December 21, 2012 opinion of the Cour d'Appel de Paris, as well as the lower court's July 5, 2012 order. We further grant plaintiffs' motion for judicial notice of the superior court case No. M117336.

plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed." (*Stangvik*, *supra*, 54 Cal.3d at p. 755.)  Indeed, our Supreme Court commented, "It is difficult to justify giving preferential status to a plaintiff's choice of forum if the plaintiff is not a resident." (*Ibid.*, fn. 7.)  Accordingly, appellate courts have properly rejected the argument plaintiffs make here. (See, e.g., *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1541, 1543; *Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 412; *Chong v. Superior Court*, *supra*, 58 Cal.App.4th at p. 1039; cf. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.* (2007) 549 U.S. 422, 430 [appropriateness of chosen forum is less reasonable when plaintiff's choice is not its home forum].)

Nor is it necessary that defendants establish that California is a "seriously inconvenient forum," as plaintiffs adamantly contend.  The case on which they rely, *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 611, created the "seriously inconvenient" language as the showing defendant must make to overcome the plaintiff's choice of forum; but clearly this standard is at best inapplicable to nonresident plaintiffs.  Even the case cited by the *Ford Motor* court, *Northrop Corp. v. American Motorists Ins. Co.* (1990) 220 Cal.App.3d 1553, 1561, did not create such a blanket rule.  In any event, *Ford Motor* involved a dismissal of an action, not a stay as is the case here, and thus its "seriously inconvenient" standard does not apply. (*Century Indemnity Co. v. Bank of America, supra,* 58 Cal.App.4th at p.  412.)  The trial court "has considerably wider discretion to grant stays precisely because under a stay California retains jurisdiction." (*Id*. at p. 411.)

In its ruling the trial court expressly determined that the private and public interest factors "weigh[ed] against litigation in California."  The court was not convinced by plaintiffs' assertion that the case would resolve more quickly here, as the case had not yet been set for trial.  The court further noted that translation costs would be incurred

12

whether trial took place in California or in France; and the costs of translating the medical records and emergency personnel reports for the French court would "pale in comparison" to the translation expenses that would be necessary if the case were tried here.[5] Finally, because the French remedy was governed by strict liability, the trial court was not convinced that the testimony of California witnesses would be required.

On appeal, plaintiffs challenge this reasoning, contending that defendants' showing was "deficient" and devoid of supporting evidence. Relying on the declaration of Yves Hudina, plaintiffs insist that testimony would be needed from first responders and medical personnel in order for a full recovery to be awarded. Yet, plaintiffs point out, two fire department chiefs stated by declaration that they would be unavailable to testify in France; and according to Hudina, the expense of translating medical records, deposition transcripts, and discovery responses would be "prohibitive." Hudina also anticipated a delay of three to five years for some plaintiffs. Medical providers submitted declarations conveying their certainty that unless the court retained the case, they would not be paid for the balance of the amounts due for their services, and they would not be financially able to travel to France to testify. And plaintiffs' counsel represented that plaintiffs were willing to incur inconvenience to have the case heard here; at least one plaintiff was willing to travel to Monterey to testify at trial, since that inconvenience would be "grossly outweighed" by the need to have the medical providers available without the necessity of translation,

Plaintiffs further dispute the findings that the public interest factors favor moving the case to France. The court found "little doubt that this multi-plaintiff case which has

---

[5] The judge seems to have misspoken by saying that "the translation expenses that would be incurred if the case were tried in California would seem to pale in comparison." Her intent is obvious, however, from the context of the entire paragraph.

been consolidated with three other cases will contribute to court congestion. This is especially so in light of the recent, significant and unprecedented cuts made to the budget of the California state courts. Multiple summary judgment/adjudication motions are currently set to be heard in this case, and the translation requirements for testimony at trial by multiple French witnesses would be logistically challenging for a California court and jury, as would the application of a French Tourism Code. [¶] But perhaps more compelling is that none of the remaining defendants are California[] entities, none of the plaintiffs are California residents, the tour at issue was for the benefit of French residents and plaintiffs seek the application of French law. This would seem to be the quintessential instance of a California jury deciding a case in which the local community has little concern. France's competing interest in this litigation clearly outweighs California's."

In our view, the private interest factors do not clearly point to litigation in France. To the extent that it is a viable consideration, the availability of a remedy in France was acutely disputed in the opinions of the consultants for both sides.[6] Plaintiffs have indicated their willingness to travel here for trial and suffer other inconvenience for the benefit of having emergency personnel and other medical providers available to testify. Nevertheless, we recognize that the balancing of private and public interest factors must be undertaken with flexibility, "without giving undue emphasis to any one element." (*Stangvik*, *supra*, 54 Cal.3d at p. 753.) Furthermore, the court was not required to base its ruling on an "extensive evidentiary showing." (*Campbell v. Parker-Hannifin Corp., supra,* 69 Cal.App.4th at p. 1542; accord, *Morris v. AGFA Corp., supra,* 144 Cal.App.4th

---

[6] Laurence Jegouzo specifically described the "full compensation" that would be offered under the French Tourism Code; Yves Hudina, on the other hand, stated that it was unlikely that the plaintiffs' recovery would equal the amount they still owed their medical providers, and Jean-Marie Tomasi opined that certain plaintiffs would receive an insignificant amount or nothing at all.

14

at p. 1462.)  As noted earlier, the trial court's balancing of these factors is entitled to substantial deference.  (*Roulier v. Cannondale, supra,* 101 Cal.App.4th at p. 1188, citing *Chong v. Superior Court, supra*, 58 Cal.App.4th 1032, 1037.)

Given the documentary evidence submitted by the parties, the trial court had a sufficient basis for inferring that there would be excessive costs associated with the translation of documents and testimony from French to English.  The court not only weighed the comparative expense to the parties of trying this complex case in California against trial in a French court, but also emphasized the community's interest in avoiding excessive court congestion and stress on jurors created by litigation between parties that were all residents of either France or Canada.  The court did consider plaintiffs' argument that the community has an interest in seeing that its medical providers are reimbursed for their services.  It noted, however, that the emergency care providers had agreed to enforce their existing liens on only the amount plaintiffs were to recover from Capitales Tours.  This circumstance, the court suggested, negated their reimbursement prospects as a public interest factor.  The court expressed a legitimate concern that this complex, multi-plaintiff case would burden the already congested calendar; and, as the Supreme Court commented, "preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis."  (*Stangvik, supra*, 54 Cal.3d at p. 758.)  Thus, even if the private interests of the plaintiffs could be said to outweigh those of Capitales Tours and Contact Amerique, there were strong indications that the public would not be served by retaining the case in Monterey County Superior Court.

"A court has exercised discretion appropriately when it acts within the range of options available under governing legal criteria in light of the evidence before it." (*Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758.)  An abuse of discretion may be found only if " 'no judge could have reasonably reached the challenged result.  [Citation.]  "[A]s long as there exists 'a reasonable or even fairly

15

debatable justification, under the law, for the action taken, such action will not be . . . set aside.' " ' " (*Guimei v. General Elec. Co.* (2009) 172 Cal.App.4th 689, 696.)  Here, both parties may suffer inconvenience and expense from litigating the case in the forum preferred by the other party.  But as the Supreme Court made clear in *Stangvik*, *supra*, 54 Cal.3d at page 762, "these problems are implicit in many cases in which forum non conveniens motions are made, and it is for the trial court to decide which party will be more inconvenienced."  Here we cannot say that the trial court, having evaluated the evidence bearing on the public and private interest factors, abused its discretion in concluding that this case would be more appropriately tried in France.

### *Disposition*

The order staying these consolidated actions is affirmed.


_____

ELIA, Acting P. J.


WE CONCUR:



_____

BAMATTRE-MANOUKIAN, J.



_____

MÁRQUEZ, J.