Filed 3/5/21  United States Aviation Underwriters, Inc. v. Apical Industries, Inc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| UNITED STATES AVIATION UNDERWRITERS, INC., | D076860 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00057420-CU-NP-NC) |
| APICAL INDUSTRIES, INC., | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Cunningham Swain, Steven D. Sanfelippo, Michael J. Terhar and Jonathan E. Hembree for Plaintiff and Appellant.

Michaelis Montanari & Johnson, Garry L. Montanari and Wesley S. Wenig for Defendant and Respondent.

Plaintiff and appellant United States Aviation Underwriters, Inc. individually and on behalf of United States Aircraft Insurance Group (Underwriters) appeals from an order entered after the trial court granted the motion of Apical Industries, Inc, (Apical) to stay or dismiss Underwriters' lawsuit on forum non conveniens grounds, and stayed the action pending

completion of another proceeding in New York. Underwriters contends the court abused its discretion in its ruling; that it misapplied the law and failed to consider all of the relevant public and private interest factors necessary to assess whether the action should remain in California. It further contends that no reasonable court could have weighed the relevant factors in favor of staying the case, and the cases relied upon by Apical do not support the court's decision. We reject these contentions, and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Underwriters, a New York corporation with its principal place of business there, filed a complaint in subrogation against Apical. It alleged that Apical, a designer and manufacturer of emergency flotation systems for helicopters, supplied a defective and dangerous emergency flotation system causing a sightseeing helicopter in New York to roll and sink upon an emergency water landing and resulting in the death of five passengers. Underwriters alleged it had issued a policy of aircraft insurance to tour company Liberty Helicopters (Liberty) and paid on its policy for the helicopter's loss. Underwriters brought tort and products liability causes of action under theories of manufacturing and design defects, failure to warn, negligence and negligent failure to warn, and breach of implied warranty. Apical unsuccessfully demurred to the complaint on grounds the claims were barred under New York's economic loss rule.

Apical thereafter moved to stay or dismiss the lawsuit on grounds of forum non conveniens. It asserted that as a result of the accident and before Underwriters filed its complaint, a wrongful death lawsuit had been filed in New York County—*Cadigan, et al. v. Liberty Helicopters, et al.* (March 13, 2018, No. 152286) [2018 WL 1312212] (N.Y. Sup.) (the *Cadigan* action)—in which Apical, a California-based corporation, had stipulated to submit to the

2

New York court's jurisdiction in exchange for the plaintiffs' waiver of punitive damages and also with respect to Underwriters' property claims in subrogation in the California action. Apical argued Underwriters' causes of action closely mirrored those against it in the *Cadigan* action, and thus there was "no practical impediment to [Underwriters] or Liberty . . . making their claims against A[pical] in the *Cadigan* action." It argued Underwriters' complaint involved the same evidence and liability issues involving the other *Cadigan* defendants, but those defendants were not parties to the California action or California residents, presenting challenges to personal jurisdiction in California if Apical were to bring them into the case via cross-complaint. According to Apical, access to evidence from those parties—all but one of whom had already submitted to New York jurisdiction and could be subject to coordinated discovery and compulsory process there—would be significantly more difficult, costly and time-consuming in the California action, causing it unfair prejudice because the parties were highly relevant to the accident flight and their evidence was required for a fair result. Apical argued New York was a suitable alternative forum, and the balance of public and private interest factors—access to sources of proof, the cost of obtaining and availability of compulsory process for witnesses, burdens on local courts, protecting jurors' interests, California's interests and competitive disadvantages to its businesses—favored New York as the forum for Underwriters' claims. It argued Liberty and Underwriters would not be inconvenienced by dismissal of the California lawsuit because they were both New York corporations and their evidence was located in New York. Apical submitted a declaration from its counsel attaching Underwriters' complaint and the *Cadigan* second amended complaint.

In opposition, Underwriters argued that Apical's motion should be denied because California was the sole location of all the documents and witnesses relevant to the design and manufacturing issues presented by its lawsuit. It pointed out that Apical, which is located in Oceanside, California, had initially objected to the New York court's assertion of personal jurisdiction over it in the *Cadigan* action and claimed it had no nexus with New York. Underwriters asserted it would be inconvenient for Apical to litigate anywhere other than its home forum. Underwriters argued that all of the information and witnesses relating to Apical's design and manufacture were in California and sale of the flotation system occurred in California. It asked the court to reject Apical's "procedural maneuvering" and maintain the action in California

The trial court tentatively denied Apical's motion, finding the public and private interests weighed in favor of keeping the action in California.[1] After considering the parties' arguments on the motion and taking the matter under submission, however, the court granted the motion. It ruled Apical met its burden of showing the balance of private and public interests required using New York as the alternate forum: "[Apical] has entered into a stipulation to submit to personal jurisdiction in New York and there is no dispute that any of [Underwriters'] claims are time-barred. Moreover, while [Apical] is a California corporation that designs and manufactures its

_____

[1] The tentative ruling reads in part: "[T]he Court is not persuaded that it would be in the interest of substantial justice to have this matter adjudicated in New York. Although [Apical] has established that New York is a 'suitable' alternative forum, the private interests of the parties and the interests of the public weigh in favor of the action remaining in California. . . . The gravamen of the instant lawsuit is that [Apical] allegedly defectively manufactured and/or designed one of its products. . . . California has an interest in regulating products manufactured here and there is no evidence that this case will impose an undue burden on California courts."

4

products exclusively in California, the Court is persuaded that much of the evidence relating to causation and damages is located in New York, where the accident occurred. As such, the Court finds that it is in the interest of substantial justice to have the action adjudicated in New York." The court stayed the action until completion of the New York *Cadigan* case.

Underwriters filed this appeal from the order.

## DISCUSSION

### I. *Legal Principles and Standard of Review*

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) The doctrine is codified in Code of Civil Procedure section 410.30.[2] Both case authority and the statute distinguish between the dismissal of an action on this ground and a stay. (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 857; see *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 161.) When, as here, a court stays an action on ground of forum non conveniens, it retains jurisdiction over the parties and the cause to protect the interests of the California resident pending the

---

[2]     Code of Civil Procedure section 410.30, subdivision (a) provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." The Judicial Council comments to the statute state in part: "Under the doctrine of inconvenient forum, a court, even though it has jurisdiction, will not entertain the suit if it believes that the forum of filing is a seriously inconvenient forum for the trial of the action. But in such instances a more appropriate forum must be available to the plaintiff." (Judicial Council of Cal., com., reprinted at 14A West's Ann. Code Civ. Proc. (2004 ed.) foll. § 410.30, p. 486.)

5

foreign forum's final decision. (*Archibald*, at p. 857.) Apical as the moving defendant bears the burden of proof on a motion to stay or dismiss on grounds of an inconvenient forum. (*Stangvik*, at p. 751; *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 743.)

In ruling on a motion based on this doctrine, the trial court engages in a two-step process, first determining whether the proposed alternative forum is a suitable place for trial. (*Stangvik, supra*, 54 Cal.3d at p. 751; *David v. Medtronic, Inc., supra*, 237 Cal.App.4th at p. 741; *National Football League v. Fireman's Fund Insurance Company* (2013) 216 Cal.App.4th 902, 917.) " 'An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations. [Citation.] . . . "[I]t is sufficient that the action can be brought, although not necessarily won, in the suitable alternative forum." ' " (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1529.) A lawsuit " 'will be entertained, no matter how inappropriate the forum may be, . . . if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state [citations].' " (*Stangvik*, at p. 752; see also *Investors Equity Life*, at p. 1531.) Any concerns regarding the " 'suitability' " of the alternative forum may be avoided by defendant's agreement to comply with certain conditions, such as submission to jurisdiction or waiver of the statute of limitations defense. (*Stangvik*, at p. 752; see *Investors Equity Life*, at pp. 1536-1537.) The threshold issue of a suitable forum is nondiscretionary and subject to de novo review. (*Diaz-Barba v. Superior Court* (2015) 236 Cal.App.4th 1470, 1483-1484; *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436; see *Stangvik*, at p. 752, fn. 3.)

6

If the court finds the forum a suitable alternative, "the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik, supra*, 54 Cal.3d at p. 751; *see National Football League v. Fireman's Fund Insurance Company, supra*, 216 Cal.App.4th at p. 917.) "The court can also take into account the amenability of the defendants to personal jurisdiction, the convenience of witnesses, the expense of trial, the choice of law, and indeed any consideration which legitimately bears upon the relative suitability or convenience of the alternative forums." (*Archibald v. Cinerama Hotels, supra*, 15 Cal.3d at p. 860.) Courts reviewing the doctrine have identified as many as 25 somewhat-overlapping factors to be considered on these interests. (See *Great Northern Ry. Co. v. Superior Court* (1970) 12 Cal.App.3d 105, 113-114; *Northrop Corp. v. American Motorists Inc. Co.* (1990) 220 Cal.App.3d 1553, 1560.)

We review the court's weighing and balancing of public and private factors for abuse of discretion, giving "substantial deference" to the trial court's ruling. (*Stangvik, supra*, 54 Cal.3d at p. 751; *Laboratory Specialists International, Inc. v. Shimadzu Scientific Instruments, Inc.* (2017) 17

7

Cal.App.5th 755, 764.) " 'We "will only interfere with a trial court's exercise of discretion where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result." ' " (*National Football League v. Fireman's Fund Insurance Company*, *supra*, 216 Cal.App.4th at p. 918.)

## II. *New York as a Suitable Alternate Forum*

Whether an alternative forum is a suitable place for trial entails an inquiry into whether the action can be brought: there is jurisdiction and no statute of limitations bars hearing the case on the merits. (*Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180, 1186; see *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 254, fn. 22.)[3] The trial court determined New York was a suitable alternative forum, and Underwriters does not contest that part of the court's ruling. We proceed to the court's decision on the second step of the forum non conveniens analysis.

---

[3]     The United States Supreme Court in *Piper* explained: "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. [Citation.] In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." (*Piper Aircraft Co. v. Reyno*, *supra*, 454 U.S. at p. 254, fn. 22.) *Piper*'s " 'no remedy at all' " exception applies only in rare circumstances as where the alternate forum is a foreign country without an independent judiciary or due process of law. (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 134.) Under *Stangvik*, however, the court may not consider the fact that the alternate forum fails to recognize a particular remedy that would be available to the plaintiff under California law. (*Stangvik*, *supra*, 54 Cal.3d at pp. 754 ["the fact that California law would likely provide plaintiffs with certain advantages of procedural or substantive law cannot be considered as a factor in plaintiffs' favor"], 764; *Shiley Inc.*, at p. 133; *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 710.) On this prong, there is no balancing or discretion to be exercised. (*Shiley Inc.*, at p. 132.)

### III. *Balancing of Private and Public Interests*

The court determined that the balance of private and public interests favored New York as the appropriate forum for Underwriters' lawsuit, in part finding "much of the evidence relating to causation and damages is located in New York, where the accident occurred." Underwriters contends the court misapplied the law by failing to evaluate all of the relevant factors. It points to the court's tentative ruling, characterizing it as finding Apical "failed to produce any evidence in support of any of the public interest factors." Underwriters argues Apical came forward with no new evidence establishing any burden on California courts in retaining the lawsuit, and even after the hearing the court recognized the product was designed and manufactured exclusively in California. It argues for these reasons the court could not have reached its ruling on the motion because Apical did not attempt to meet the public interest factors, and on this ground alone we should reverse.

In assessing whether the trial court's decision is an abuse of discretion we look to whether its act "is within the range of options available under governing legal criteria in light of the evidence before [it]." (*Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758, disagreed with on other grounds in *National Football League v. Fireman's Fund Ins. Co., supra,* 216 Cal.App.4th at p. 933.) We ask whether the court's ruling " ' "exceed[ed] the bounds of reason," ' " after considering all of the circumstances before it; if not, we affirm the ruling regardless how we might have decided the issue in the first instance. (*Quanta Computer Inc. v. Japan Communications Inc.* (2018) 21 Cal.App.5th 438, 447 [review of grant of forum non conveniens motion].) In the context of a forum non conveniens analysis, as is generally the case on appellate review, we presume the order is correct. (*Ibid.*) We are ultimately concerned with the correctness of the

9

lower court's decision rather than its reasoning. (*Ibid.*; see *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696 [appellate court must uphold order if there is a reasonable or even fairly debatable justification under the law for the court's action]; accord, *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647.)

Underwriters' focus on the court's tentative ruling is misplaced. " '[A] court is not bound by its statement of intended decision and may enter a wholly different judgment [or order] than that announced.' " (*In re Marriage of Ditto*, *supra*, 206 Cal.App.3d at p. 646.) Even if we were to consider it, Underwriters mischaracterizes the court's tentative ruling as finding no evidence of *any* public interest factor. The court's tentative ruling addressed only evidence of undue burden on the California court. Court congestion or burden is but one factor in the forum non conveniens public interest analysis. The court had wide discretion in weighing and balancing all of the factors, including after its tentative ruling. We reject the suggestion that the court was bound by its tentative finding or precluded from revisiting or reassessing the strength of certain factors in its final ruling.

Citing *Stangvik*, Underwriters argues "the lower court must weigh all of the public and private interest factors" and "may not base its conclusion on some factors to the exclusion of others." *Stangvik* involved a medical product designed and manufactured in California by a California corporate defendant causing injury to foreign plaintiffs. The California Supreme Court acknowledged the relevant cumulative California connections with the defendant: the presumption of California's convenience and close connection with the alleged wrongful conduct committed here. (*Stangvik*, *supra*, 54 Cal.3d at pp. 757 [summarizing the plaintiffs' showing on the point]), 760.) However, it rejected decisions holding these factors necessarily meant the

10

California court would not be unfairly burdened, stating such an analysis "would require that the court congestion factor always be decided in favor of the plaintiff and against a California corporation which caused injury to consumers anywhere in the world, if the product was manufactured here." (*Id*. at pp. 760-761.)  The court stated "we cannot look only to such circumstances," since other matters were relevant such as the complexity of the case and condition of the court's docket.  (*Id*. at p. 761.)  The import of *Stangvik* is that even where, as here, there are strong considerations favoring California as a forum (a California corporation designs and manufactures an allegedly defective product in California), those circumstances are not dispositive on the public and private interest factors, but may be outweighed by other considerations.

The trial court's ruling in this case, which expressly acknowledges the law requires a balancing of private and public interests and states it applied those standards, does not suggest the court placed undue emphasis on any particular factor to the exclusion of others.  (Compare *Shiley Inc. v. Superior Court*, *supra*, 4 Cal.App.4th at pp. 130, 135 [court's ruling that petitioners had " 'failed to show the kind of weighty reasons to interfere with the plaintiff's [*sic*] choice of forum that case law requires' " and finding it was "ludicrous" for Orange County defendant to say California was inconvenient, showed court did not consider the relevant factors but relied too heavily on plaintiffs' choice of forum and defendant's residence].)  Additionally, the public and private factors are not fixed and inflexible.  The California Supreme Court has explained that "[t]he trial court retains a flexible power to consider and weigh all factors relevant to determining which forum is the more convenient . . . ."  (*Archibald v. Cinerama Hotels*, *supra*, 15 Cal.3d at p. 860.)  The "private and public interest factors must be applied flexibly,

11

without giving undue emphasis to any one element" and no court should decide there are circumstances in which the doctrine will always apply or never apply. (*Stangvik*, *supra*, 54 Cal.3d at p. 753.) The strength, weakness or absence of any particular factor is not fatal to a finding that other relevant factors warrant granting or denying a motion to dismiss or stay on forum non conveniens grounds.

To the extent Underwriters suggests *Stangvik* requires the court to make express findings on each and every factor, it is incorrect. The law is to the contrary: no structured analysis or express ruling on the record is required for a proper exercise of the court's discretion on a forum non conveniens motion. (*Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542.) And as stated, the factors are not immutable. (See *Stangvik*, *supra*, 54 Cal.3d at p. 751 [describing factors as examples, listing them using the phrases "such as" and "including"]; *Archibald v. Cinerama Hotels*, *supra*, 15 Cal.3d at p. 860 [trial court may take into account "any consideration which legitimately bears upon the relative suitability or convenience of the alternative forums"].)

There is no indication that the trial court in this case failed to consider the relevant factors. As we set out more fully below, Apical's motion addressed the private and public interest factors. The trial court could have reasonably decided that other public and private interest factors weighed in favor of New York as the forum even if no appreciable burden to the California court would result from retaining the case here. (See, e.g., *Stangvik*, *supra*, 54 Cal.3d at p. 760 ["the [appellate] court was justified in upholding the judgment on the basis of the other public and private interest factors which it considered"].) Or the court could have decided that Apical did in fact demonstrate burden on the California court in, for example,

12

compelling the presence of unwilling New York witnesses if the action were to remain here to warrant its ruling. The trial court was not required to explain its reasoning. In short, Underwriters has not shown the court misapplied the law by failing to consider relevant factors.[4]

A. *Private Interests*

The private interest factors focus on the litigants. (*Price v. Atchison, T. & S.F. Ry. Co.* (1954) 42 Cal.2d 577, 584-585.) As stated, in determining whether to grant a forum non conveniens action, those factors "are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses." (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) The private interests broadly involve " 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' " (*Price*, at p. 585.) It may be that both sets of parties suffer inconvenience and expense from litigating the case in the forum preferred by the other side. But such problems "are implicit in many cases in which forum non conveniens motions are made, and it is for the trial court to decide which party will be more inconvenienced." (*Stangvik*, at p. 763.) If the balancing does not clearly favor

---

[4]     Citing *Fox Factory, Inc. v. Superior Court* (2017) 11 Cal.App.5th 197, Underwriters argues a court abuses its discretion when it fails to properly apply relevant legal standards. But in *Fox Factory*, the trial court denied a motion to dismiss or stay the plaintiff's lawsuit on forum non conveniens grounds citing authority requiring California to be a "seriously inconvenient" forum for the motion to succeed. (*Id*. at p. 200.) The Court of Appeal explained that use of that particular legal test in cases involving a foreign plaintiff, as plaintiff was there, contravened *Stangvik*, and thus the lower court erred by using it. (*Id*. at pp. 205, 207.) *Fox* does not convince us the trial court here failed to properly consider or weigh the various public and private interest factors.

one state over the other, we must defer to the trial court's discretionary decision according more weight to the factors favoring the state chosen.

Underwriters contends no reasonable court could conclude the private interest factors weigh in favor of staying its action. It argues Apical admitted that all of its conduct related to the design and manufacture of the flotation system took place in California, and thus all of the documentary evidence and knowledgeable witnesses are in this state. Underwriters points out that in connection with Apical's challenge to New York jurisdiction, Apical submitted evidence that it had no connection to New York; it was not authorized to do business there, did not maintain offices or facilities there, it designed and manufactured its products exclusively in California, it sold and shipped its product to a Canada company in Canada, and it did not enter into any contract with any entity in New York. It characterizes Apical's position on its forum non conveniens motion as a "reversal" amounting to "gamesmanship and forum shopping."[5] Underwriters claims Apical's sworn admissions established the private interest factors weighed in favor of denying its motion.

In support of its motion, Apical presented a declaration from its counsel Garry Montanari, who averred, among other things, that while Underwriters alleged the helicopter flotation device was manufactured by Apical, "A[pical] did not install the float system onto the accident helicopter. Apical did not conduct maintenance of the subject float system" but "[t]hose activities were

_____

5    Underwriters' accusation of gamesmanship on Apical's part is without merit. Apical may have at first challenged the New York court's jurisdiction over it, but the existence of personal jurisdiction is a different inquiry than the question of whether an action "may be more appropriately and justly tried elsewhere." (*Stangvik, supra*, 54 Cal.3d at p. 751.) Apical later submitted to the New York court's jurisdiction, and we see nothing inconsistent with its earlier position and its forum non conveniens motion.

conducted by other entities outside the State of California." He averred that Apical was one of ten defendants in the New York *Cadigan* action, and the only defendant from California. He identified the other defendants, including the helicopter pilot, all of which had appeared or agreed to appear in New York with the exception of a group of companies (EuroTec) associated with installing or servicing the system. Montanari stated: "[The helicopter pilot], in particular, is the only eyewitness who was on the subject helicopter and survived the accident. He is a vital witness/party. He is believed to be a resident in the New York area. It is probable that he would challenge personal jurisdiction in California. Thus, the *Cadigan* action involves a far more complete roster of relevant parties than this California subrogation action does or ever could do, based on anticipated challenges to personal jurisdiction if A[pical] was forced to cross-complain against those parties in this California action." He further averred: "Because the underlying helicopter accident does not involve any other California party, and there are no known witnesses or evidence located in California other than A[pical]-controlled evidence and witnesses, the majority of evidence relevant to this case will be located or available in New York. The aircraft was maintained and tested there when it was in operation. The aircraft wreckage is there. The pilot . . . is in the New York area. Investigations were conducted there. First responders and recovery workers are located in New York. Additionally, the FAA/NTSB only allows one deposition of its investigators per accident so those witnesses could only be deposed in one jurisdiction on liability issues. . . . Taking those depositions in a coordinated way with all parties present in the *Cadigan* action would be the much more convenient and preferable way to handle that discovery. Thus, New York offers far greater ease of access to sources of proof, a lower of [*sic*] cost of obtaining

15

attendance of witnesses, and the availability of compulsory process for the attendance of unwilling witnesses located in New York or who are under the control of parties who have already submitted to the jurisdiction of New York arising out of the helicopter accident. Furthermore, conducting pretrial investigation and discovery will be significantly less expensive and burdensome if it is coordinated among all parties in the *Cadigan* action in New York." Montanari went on to say that none of the other *Cadigan* defendants were California residents, so access to evidence from them would be more difficult, costly and time-consuming, prejudicing Apical because "those other parties are highly relevant to the accident flight and the evidence they could provide should be available for a fair result in this litigation."

Of course, causation and injury are elements of negligence, as well as design and manufacturing defect and failure to warn claims. (See *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 318, citing *Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 614 & *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560.) Establishing causation in a products liability case requires a showing that some defect in a product's design or manufacture, or some other negligence or failure to warn, was a substantial factor in an injury or loss, here the loss of the helicopter. (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968; *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 323-324; *Bolger v. Amazon.com, LLC* (2020) 53 Cal.App.5th 431, 461 [strict liability is not absolute liability; the plaintiff's injury must have been caused by a defect in the product]; *Hoover v. New Holland North America, Inc.* (N.Y.Ct.App. 2014) 11 N.E.3d 693,701; *Voss v. Black & Decker Mfg. Co.* (N.Y.Ct.App. 1983) 450 N.E.2d 204, 208.)

16

Underwriters' claim that the sole relevant witnesses are in California is an overly narrow view of the issues in this products liability/subrogation case. Apical made a showing that the evidence would not be necessarily restricted to evidence of negligent design and manufacture. A manufacturer defendant is not prevented from presenting evidence that some other circumstance or actor contributed to the injury or loss, based on the circumstances surrounding the occurrence of the accident. (Accord, *Endicott v. Nissan Motor Corp.* (1977) 73 Cal.App.3d 917, 926, 927 ["If the violence of a crash is the effective efficient cause of plaintiff's injuries to the extent that it supersedes other factors such as defective design and makes them immaterial, plaintiff cannot recover"; in *Endicott*, "plaintiff's operation of his automobile, negligent or not, was the overriding cause of the serious accident that brought him severe injury" and difficulty in reconstructing the probable sequence of events along with other limitations on expert evidence "wholly preclude any demonstration of substantial probability of causal link" of the product's design and enhancement of plaintiff's injuries].)

Underwriters did not rebut or object to Montanari's declaration, which established that witnesses relevant to possible contributors to the accident and information about the helicopter's loss—the helicopter pilot, persons who tested and maintained the aircraft, first responders, and accident investigators—were in New York and had submitted to jurisdiction there. Underwriters did not contest Montanari's assertion that it would present a challenge to compel key witnesses such as the pilot to appear if sued in a California cross-complaint. Underwriters points to Apical's initial jurisdictional challenge, but Apical has since agreed to submit to New York jurisdiction. The evidence supports the court's conclusion that New York was a more convenient place for trial in view of the evidence from these witnesses,

17

despite the fact much if not all of the evidence relating to design and manufacture of the product would be in California. (Accord, *Stangvik*, *supra*, 54 Cal.3d at p. 762 [holding the private interests of the parties favored trial in Scandinavia, in part reasoning: "It is true that much, but not all, of the evidence concerning liability exists in California; but virtually all the evidence relating to damages is in Scandinavia," footnote omitted].)

The parties' respective residences do not compel a different conclusion. Though a corporation's state of incorporation or principal place of business is presumptively a convenient forum (*Stangvik*, *supra*, 54 Cal.3d at p. 755), a "[California] defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action." (*Stangvik*, at p. 756, fn. omitted; *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542.) Further, because Underwriters is a New York entity, "the fact [it] chose to file [its] complaint in California is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, at p. 756, fn. omitted; accord, *Fox Factory, Inc. v. Superior Court*, *supra*, 11 Cal.App.5th at p. 205 ["the forum choice of a foreign plaintiff is not entitled to a presumption of convenience"].) Finally, Apical presented evidence that it already had appeared in New York, and Underwriters had also hired attorneys for Liberty and filed an answer in the *Cadigan* action. The court reasonably could conclude Apical should not suffer the disadvantage and additional expense of having counsel appear in both states, and Underwriters would face no additional burden if the case were tried in New York.

It was reasonable for the trial court to conclude Apical adequately demonstrated that many likely witnesses were present in New York and thus the ease of access of proof, the cost of obtaining their attendance, and the availability of compulsory process for the attendance of any unwilling

18

witnesses, weigh in favor of New York as the appropriate forum. Our review for abuse of discretion means we may not reweigh the factors and ignore those supporting the court's resolution, but must instead give its decision substantial deference. Particularly in view of Montanari's declaration, we cannot say the trial court abused its discretion in deciding that the private interests of the parties support litigating this matter in New York; we therefore defer to its conclusion. (*Stangvik, supra*, 54 Cal.3d at pp. 751-752.)

B. *Public Interest*

Underwriters contends Apical did not meet its burden to prove the public interest factors weighed in favor of granting Apical's motion. It points again to the trial court's tentative conclusion that there was no evidence the case would impose an undue burden on California courts. Underwriters argues California has a strong interest in deterring negligent design, production and sale of products within its borders, and in comparison, New York "has no interest in a product liability subrogation lawsuit brought by an insurance company against a manufacturer, and involving a product not designed, manufactured or sold in New York." Underwriters maintains "[n]othing changed" after the court's tentative ruling; it argues Apical did not counter that California—its principal place of business and state of incorporation—was " 'presumptively a convenient forum.' "

We reject the latter contention, which again seeks to set in stone the court's tentative ruling. The court had ample basis to change its decision on the public interest aspect of the analysis. In making its motion, Apical argued California had little interest in claims focusing on a helicopter accident that occurred in New York, involving a helicopter owned and operated in New York, and resulting in injuries and property damage to New York residents. It argued "[a]ny interest that California may have as it

applies to Apical is outweighed by New York's public interest in adjudicating claims arising from the death of its residents while they are passengers in a helicopter that is being operated in its airspace." Apical also touched on issues of court congestion, arguing "[t]he time to litigate this case in California would be protracted due to Apical's limited ability to compel witnesses and documents in California from the New York and other non-forum parties who are already subject to and/or have submitted to the jurisdiction of the pending New York *Cadigan* action." It argued much of the evidence would originate in New York, including that involving Liberty, the helicopter operator and insured.

The guiding principle in considering the public interest is that the jurisdiction with the greater interest should bear the cost and burden of entertaining the litigation. (*Stangvik, supra*, 54 Cal.3d at p. 757, citing *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 260-261.) The examination is not so much an evidentiary question as a process of weighing and balancing "more general considerations." (*Campbell v. Parker-Hannifin Corp., supra*, 69 Cal.App.4th at p. 1542; see *National Football League v. Fireman's Fund Ins. Co., supra*, 216 Cal.App.4th at p. 933, fn. 15 [citing *Campbell* and another case for proposition that no particularized affidavits are required].)[6] We will not attach significance to the court's failure to mention any particular part of the evidence. (*National Football League v. Fireman's Fund Ins. Co.*, at p. 936.) "Where the record is silent we draw all reasonable inferences in

_____

[6]     In *National Football League v. Fireman's Fund Ins. Co., supra*, 216 Cal.App.4th 902, the court stated that "[t]he moving party burden on a forum non conveniens motion appears to consist of establishing a suitable alternate forum and providing the trial court with sufficient facts to carry out its weighing and balancing analysis. Any additional requirements would appear to conflict with the clear mandate that the analysis is entrusted to the trial court's discretion." (*Id*. at p. 933, fn. 15.)

favor of the trial court's ruling, because that court had no duty to fully express the reasons for its ruling." (*Ibid*.)

It is clear both New York and California each have an interest in adjudicating the matter. California certainly has an interest in protecting its consumers from the production and sale of defective products in this state, or as *Stangvik* characterized this factor, an interest in deterring negligent conduct. (*Stangvik, supra*, 54 Cal.3d at p. 759.) On the other hand, both Underwriters and Liberty are domiciled in New York and the accident occurred there involving Liberty's tour company helicopter with numerous essential New York witnesses and victims. New York has at least an equally strong interest in assessing the contribution of not only Apical, but also the resident defendants—including Liberty employees and the pilot—in the cause of the accident that resulted in the aircraft's loss as well as deaths in its state. California jurors have little interest in the damage to a helicopter owned and operated in New York, suffered by a New York company, in New York. (Accord, *Hansen v. Owens-Corning Fiberglas Corp., supra*, 51 Cal.App.4th at p. 760 ["California courts . . . have little or no interest in litigation involving injuries incurred outside of California by nonresidents"].) The trial court could reasonably take the view that successful litigation in New York would have the same deterrent effect on Apical that a California court might afford. (Accord, *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1467, disagreed with on other grounds in *National Football League v. Fireman's Fund Ins. Co., supra*, 216 Cal.App.4th at p. 933.) It reasonably decided the public interests favor maintaining the action in New York, and we decline to reweigh the evidence and substitute our judgment for the trial court's. (*National Football League*, at p. 936.)

21

Underwriters summarizes and distinguishes other cases in an effort to convince us that the trial court erred in its ruling because its subrogation case against Apical does not involve multiple plaintiffs, defendants or victims. It points out the forum non conveniens doctrine is equitable in nature, and argues there is nothing equitable about allowing Apical to engage in "blatant manipulation" or "forum shopping." Underwriters cites more cases to highlight that in none of them was the forum non conveniens doctrine used to forum shop, but it does not explain why New York law is so much more beneficial to Apical that it would be compelled without justification to move the case there. Underwriters concedes that a stay is appropriate where there are substantial connections with a foreign jurisdiction and comparatively minimal connections with California, but it argues "where the case involves a California defendant <u>and</u> there are substantial connections between the case and California, staying or dismissing a case based upon forum non conveniens would be inappropriate."

The forum non conveniens analysis is not so bright-line, and because each case turns on its own facts, it is unhelpful to compare the circumstances here to other cases. Here, New York has a strong connection to the subject matter of the case, and we see nothing about Apical's motion suggesting it unfairly or unreasonably invoked the forum non conveniens doctrine. We are required to give "substantial deference" to the court's discretionary determination according more weight to the public and private interest factors favoring New York as the appropriate forum and staying the California action. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) For the reasons stated above, we cannot say the court's ultimate conclusion exceeds the bounds of reason under all of the circumstances. Thus, we affirm the order.

22

## DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.