[No. A078285. First Dist., Div. Two. Jan. 21, 1999.]

ELIZABETH ROSEMARY CAMPBELL et al., Plaintiffs and Appellants,
v.
PARKER-HANNIFIN CORPORATION et al., Defendants and
Respondents.

1536

## Counsel

Tanke & Willemsen, Tony J. Tanke; Law Office of Gary L. Simms, Gary L. Simms; O'Reilly & Collins, Terry B. O'Reilly and James Paul Collins for Plaintiffs and Appellants.

Kenney & Markowitz, Tom K. Hammitt and Stephen C. Kenney for Defendant and Respondent Parker-Hannifin Corporation.

Bronson, Bronson & McKinnon, Robert Charles Gebhardt and Robert J. Stumpf, Jr., for Defendant and Respondent Cessna Aircraft Company.

Reid, Axelrod, Ruane & McCormack, Peter Axelrod and David D. Griffis for Defendants and Respondents Instrument Pro, Inc., and Brent's International, Inc.

## Opinion

**KLINE, P. J.**—Plaintiff Elizabeth Rosemary Campbell and 19 other heirs of victims of a fatal airplane crash in Australia appeal from the trial court's

ruling granting summary judgment in favor of defendant Cessna Aircraft Company and staying the action as to defendants Parker-Hannifin Corporation, Instrument Pro, Inc., and Brent's International, Inc., on grounds of forum non conveniens. Appellants contend the trial court abused its discretion in granting the forum non conveniens motion, and it erred in granting summary judgment for Cessna because there were triable issues of fact regarding the applicability of exceptions to the federal statute of limitations.

We find no abuse of discretion in the trial court's ruling staying the action as to Parker-Hannifin Corporation, Instrument Pro, Inc., and Brent's International, Inc., based on the doctrine of forum non conveniens. We also affirm the ruling granting summary judgment in favor of Cessna Aircraft Company.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

The airplane that crashed was a Cessna twin-engine model 310R, serial No. 310R0130, manufactured at Cessna's Kansas plant in 1975. The aircraft included gyroscopic flight instruments that were powered by vacuum pumps. The two original vacuum pumps installed by Cessna were manufactured by Airborne Manufacturing Company, a predecessor in interest to respondent Parker-Hannifin, and bore model No. 212CW. The original vacuum pumps were replaced sometime after 1984 with other model 212CW pumps made by Parker-Hannifin.

Cessna first sold and delivered the aircraft in March 1975 to a Georgia-based aviation company. The aircraft was owned and operated in the United States for 19 years until 1994, when it was purchased by Donald Henry Knight for an Australian air charter service and exported to Australia.

Respondent Brent's International, Inc., a California corporation based in Hayward, modified the aircraft to equip it for the long-distance flight to Australia. It obtained from the Federal Aviation Administration (FAA) the requisite special airworthiness certificate, which was issued in Oakland on June 30, 1994. In order to obtain the certificate, Brent's purchased additional navigational equipment for the aircraft from respondent Instrument Pro, a California corporation based in Oakland. The additional equipment included (1) a horizon gyro, serial No. 40663, "Aeritalia (Cessna)"; and (2) an altimeter, United Instruments, serial No. J5267. Both invoices stated that the instruments had been overhauled and certified and were covered by Instrument Pro's six-month warranty on parts and workmanship.

The aircraft was flown to Australia in July 1994, where it was registered to its new owner, Donald Knight, on September 1, 1994. Knight was a highly experienced pilot who owned and operated Knight-Air Narrandera, an air taxi service in New South Wales. Knight's total flight time was 20,760 hours, with about 2,600 hours in the Cessna Model 310.

The fatal crash occurred the night of July 28, 1995, when Knight was flying three passengers home to Wagga Wagga, New South Wales. He was piloting the aircraft under instrument flight rules. Rain was reported in the area. Knight's wife called a mobile phone aboard the aircraft and spoke with him. He told her: "I am in big trouble—I've lost my gyros." Immediately after this phone call, he advised air traffic control that he was at 9,500 feet heading for Wagga Wagga. He did not mention any problem. The plane crashed a short time later. Witnesses on the ground heard an airplane and a bang or a loud noise, and then saw "a very bright light in the sky." No one reported seeing the crash. Remnants of the bodies and the aircraft were found strewn across a field.

The crash was investigated by Australian authorities and by Cessna. The Australian Bureau of Air Safety determined: "The circumstances of this accident are consistent with a loss of control by the pilot in command during flight, which resulted in the structural limitations of the aircraft being exceeded. [¶] Significant factors contributing to the loss of control included: [¶] The probable in-flight failure of both engine driven vacuum pumps, resulting in a loss of supply to the air driven gyroscopic flight instruments. [¶] Erroneous aircraft attitude and directional indications from the gyroscopic flight instruments, which adversely affected the ability of the pilot in command to safely control the aircraft by sole reference to the remaining flight instruments. [¶] Adverse meteorological conditions which prevented the pilot in command continuing the flight by visual reference to the natural horizon, or other external features, following the loss of credible indications from the gyroscopic flight instruments."

*Procedural Background*

The multiple wrongful death actions were filed as a single complaint on July 24, 1996. Parker-Hannifin, Brent's International, and Instrument Pro filed forum non conveniens motions as their first responsive pleadings under Code of Civil Procedure section 418.10. Shortly afterward, Cessna filed a motion for summary judgment under the General Aviation Revitalization Act of 1994 (GARA), Public Law No. 103-298 (Aug. 17, 1994) 108 Stat. 1552. (49 U.S.C.A. § 40101 note.) GARA imposes an 18-year federal statute of repose for suits against the manufacturer of an aircraft.

The court ordered a continuance for further briefing by the moving parties on the question of whether Australia would accept jurisdiction of the case and the defendants. Parker-Hannifin, Brent's International, and Instrument Pro filed additional briefing on the question, which included detailed affidavits by Australian counsel. At the same time, appellants' counsel filed extensive briefs in opposition to the Cessna summary judgment motion, which included a number of documents obtained through investigation and discovery. These included reports from the accident investigations performed by Cessna and by Australian aviation authorities, responses to appellants' written discovery, and transcripts of depositions taken.

On February 20, 1997, a week after hearing argument on the motions, the court issued a minute order granting the motions to stay for forum non conveniens and Cessna's motion for summary judgment.

The orders granting the motions for forum non conveniens contained stipulations that: (1) respondents submit to personal jurisdiction in Australia upon the filing of a wrongful death action there; (2) the applicable statute of limitations in Australia be tolled from the date the complaint was filed in the Alameda County Superior Court to the entry date of the order; (3) compliance by respondents with discovery orders in the action in Australia; (4) making witnesses available at respondents' own cost for the giving of testimony; and (5) satisfaction of any judgment or settlement of the action in Australia.

## II. Discussion

### A. *Forum Non Conveniens*

 Appellants contend the court abused its discretion in granting the motions for forum non conveniens. The standards for determining whether to grant a forum non conveniens motion are set forth in *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14]: "In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make the trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the

interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." [Citations.]

"On a motion for forum non conveniens, the defendant, as the moving party, bears the burden of proof. The granting or denial of such a motion is within the trial court's discretion, and substantial deference is accorded its determination in this regard." (*Stangvik v. Shiley Inc., supra*, 54 Cal.3d 744, 751.)

In *Stangvik*, the plaintiffs were residents of Norway and Sweden who brought suit in California against a California corporation for the wrongful death of their decedents as a result of allegedly defective heart valves. Norway and Sweden were suitable alternative forums since the defendant had stipulated it would submit to jurisdiction and to the tolling of the statute of limitations during the pendency of the actions in California. (54 Cal.3d at p. 752.) The court weighed the private and public interests and concluded that the balance favored the defendant. Its assessment of the private and public factors is instructive for our case.

In reviewing the private interests, the *Stangvik* court declared that no weight should be given to the fact that California law would be more beneficial to the plaintiffs than the law of the alternative jurisdiction so long as the alternative jurisdiction afforded some remedy. (54 Cal.3d at pp. 753-754, fn. 5.) The court further declared that when the plaintiff is not a resident, his or her choice of forum "is not a substantial factor in favor of retaining jurisdiction here." (*Id.* at p. 755.) And when the defendant is a California resident, California is a presumptively convenient forum, but the presumption may be overcome by showing that the alternate jurisdiction is a more convenient place for trial of the action. (*Id.* at pp. 755-756.) In *Stangvik*, virtually all of the evidence relating to damages and advice from the treating physicians was abroad, but the evidence relating to the design and manufacturing of the heart valves was in California. (*Id.* at pp. 756-757.) The defendants stipulated that they would provide at their cost the necessary documents and witnesses. (*Id.* at p. 757.)

In considering the public interest, *Stangvik* observed that preventing court congestion resulting from the trial of foreign causes of action is an important factor and that California court dockets would be burdened by litigation of the 108 actions filed by foreign plaintiffs against Shiley in California. And California's interest in deterring wrongful conduct did not outweigh the foreign jurisdiction's interest in the death of its citizens. (54 Cal.3d at pp. 758-759.)

When weighing the public and private interests, the *Stangvik* court observed that as to the private factors, both parties would suffer some disadvantage from trial in their home forums regarding the availability of witnesses and evidence. (54 Cal.3d at pp. 762-763.) The public factors, on the other hand, clearly favored granting the motion. The burden on California courts in trying the 108 cases filed by foreign plaintiffs would be considerable, and California's interest in deterring further improper conduct by the defendant could be amply vindicated in trying actions filed by California residents. (*Id.* at pp. 763.)

 The circumstances of the present case bear marked similarity to those in *Stangvik v. Shiley Inc., supra,* 54 Cal.3d 744, and the balance likewise favors granting the motion for stay based on the doctrine of forum non conveniens. Respondents presented declarations by Australian legal scholars confirming that New South Wales would accept jurisdiction of a case that arose within its territorial boundaries, was investigated by its authorities, and involved its citizens. Like *Stangvik,* appellants here are foreigners who seek damages for the death of relatives who perished in a foreign country. Virtually all of the evidence relating to damages is in Australia, and the evidence relating to the design and manufacture of the airplane is in the United States. Thus, each side would suffer some disadvantage from trial in its home forum. The public interest, however, favors granting the motions. Trial of the action here would contribute to court congestion, as there are 20 separate plaintiffs whose damages would have to be considered. As in *Stangvik,* California's interest in the case is not sufficient to justify the commitment of judicial time and resources that would be required if the case were tried here. (*Id.* at pp. 758-761.)

Appellants argue that respondents failed to present any evidence to support their assertion that California is inconvenient. The argument ignores much of the analytical framework set forth in *Stangvik v. Shiley Inc., supra,* 54 Cal.3d 744. *Stangvik* did not require an extensive evidentiary showing. The principal evidentiary showing *Stangvik* requires is that trial may be had in the alternative forum and that some form of relief may be granted. Respondents met that burden. Examination of the private and public interests at stake involve more general considerations. Appellants cite federal cases to support their assertion that a structured analysis on the record is required for proper exercise of the court's discretion. (*Lacey v. Cessna Aircraft Co.* (3d Cir. 1988) 862 F.2d 38, 43; *DeShane v. Deere & Co.* (8th Cir. 1984) 726 F.2d 443, 446.) But in California ". . . there is no requirement that the trial court make any express ruling on a motion to stay/dismiss." (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676 [16 Cal.Rptr.2d 417].)

Appellants also argue that their choice of forum is entitled to great weight despite their nonresident status. They rely on statements made in *Hansen* v. *Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 760 [59 Cal.Rptr.2d 229] and in *Ford Motor Co.* v. *Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 610 [41 Cal.Rptr.2d 342], but those statements are contrary to the express language of our Supreme Court in *Stangvik* v. *Shiley, supra,* 54 Cal.3d at page 755 that the forum choice of a plaintiff who resides outside the United States "is not a substantial factor in favor of retaining jurisdiction here." Moreover, *Stangvik* disapproved a case that had held "substantial deference is accorded even a foreign plaintiff's choice of forum." (54 Cal.3d at p. 755, fn. 7.)

Appellants further argue that respondents have failed to show that California is an inconvenient forum. Respondents asserted in their briefs and during argument before the trial court that since the accident occurred in Australia, California would be an inconvenient forum. They indicated they would contest causation and would want to call Australian witnesses regarding the maintenance and operation of the plane in Australia and the training and proficiency of the pilot. Respondents further indicated they would want to call as witnesses persons mentioned in the coroner's report who heard or observed the crash. Thus, appellants are incorrect in asserting respondents made no showing that California would be an inconvenient forum. Moreover, we reiterate the *Stangvik* court's observation that the scales are not usually tipped on the basis of this factor in any event: "We are confronted with the somewhat anomalous situation that the parties seek to try the action in a jurisdiction which would appear to violate their interest in a convenient place for trial. Both plaintiffs and defendants are willing—indeed, eager—to litigate the matter in a jurisdiction separated by an ocean and a continent from their places of residence. Although both claim that they are motivated by the convenience of the place of trial, this court, like others before it, recognizes that an additional motivating factor—and perhaps the major one—relates to the circumstance that trial in California will enhance the possibility of substantial recovery. Plaintiffs seek and defendants resist trial in the California courts substantially for this reason." (54 Cal.3d at p. 761.)

Appellants argue that determination of which jurisdiction's laws apply is a relevant consideration in determining whether to apply forum non conveniens, citing *Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 313 [128 Cal.Rptr. 385] and *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 113 [90 Cal.Rptr. 461]. The cases cited, however, state only that avoidance of a choice-of-law question is not necessarily a reason for applying forum non conveniens. *Stangvik* and most modern cases assume that the law of the forum state will apply and direct that differences in the

generosity of the legal remedy is not a relevant factor to consider so long as *some* remedy is provided. (54 Cal.3d at pp. 753-754, fn. 5.)

Appellants have failed to convince us that the trial court abused its discretion in granting the motions to stay the action based on the doctrine of forum non conveniens. The parties vigorously argued and briefed the issues. The court was well within its discretion in concluding that the balance favored trying the case in Australia, the residence of the decedents, the plaintiffs, and site of the crash.

### B. *Summary Judgment*

■ Appellants contend the trial court erred in granting summary judgment for Cessna. ■ "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) The defendant's burden may be met only by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one of more material facts exists as to that cause of action. (*Lopez* v. *Superior Court* (1996) 45 Cal.App.4th 705, 713 [52 Cal.Rptr.2d 821].)

"Because the trial court's determination is one of law based upon the moving papers, the reviewing court must make its own determination and, in doing so, must strictly construe the papers of the moving party and liberally construe those of the opponent." (*WYDA Associates* v. *Merner* (1996) 42 Cal.App.4th 1702, 1709 [50 Cal.Rptr.2d 323].) We are mindful of the admonition that summary judgment is a drastic measure which should be used with caution so that it does not become a substitute for trial. (*Ibid.*)

■ Appellants contend the ruling was erroneous because there were triable issues of fact regarding the applicability of exceptions to the federal statute of limitations. The trial court found that Cessna had established a complete defense to appellants' causes of action for product liability and negligence and was entitled to judgment as a matter of law because each of the causes of action is barred by the 18-year statute of limitation set forth in GARA.

■ GARA was enacted in response to a serious decline in the nation's general aviation aircraft manufacturing industry. The tremendous increase in

the industry's liability insurance costs was identified as an important cause of the decline. Accordingly, GARA established an 18-year statute of repose for civil actions against aircraft manufacturers for damages arising out of an accident involving a general aviation aircraft. (Legis. hist., 1994 U.S. Code Cong. & Admin. News, at p. 1638.)

GARA provides in pertinent part: "Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any component, system subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—(1) after the applicable limitation period beginning on—(a) the date of delivery of the aircraft to its first purchaser or lessee . . . [¶] . . . [¶] (2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition. . . ." (GARA, § 2, subd. (a).) "[T]he term 'limitation period' means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft. . . ." (GARA, § 3, subd. (3).)

GARA further provides that the limitation period does not apply "if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, and aircraft or component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered. . . ." (GARA, § 2, subd. (b)(1).)

1) *Replacement Part Provision*

 Appellants contend the action was not time barred because new time periods were triggered by the replacement of the gyroscopic artificial horizon in 1994 and by the replacement of the vacuum pumps sometime after 1984. Appellants argue that the new time period applies to Cessna and not just to the manufacturer of the parts that were replaced. The trial court disagreed, interpreting the replacement parts provision as applying only to

the entity that manufactured the replacement part. The legislative history supports the trial court's interpretation. ■■■ The House Judiciary Committee Report states: "Since the bill provides for a 'rolling' statute of repose, victims and their families will have recourse *against new component part manufacturers* for a part installed subsequent to delivery in the event of a crash attributable to a structural defect or similar flaw in a new component part." (Legis. hist., 1994 U.S. Code Cong. & Admin. News, at p. 1647, italics added.)

■■■ Appellants also claim that Cessna was the manufacturer of the gyroscopic artificial horizon part that was replaced in 1994.[1] They base their claim on the fact that the name "Cessna" was stamped on the dataplate attached to the part. But the same dataplate also stated "Manufactured by Aeritalia Settore Strumentazione." Moreover, Cessna submitted a declaration by its section supervisory engineer stating "Cessna did not design and did not manufacture this [gyroscope], nor did Cessna participate in any way in the design or manufacture of this instrument." Contrary to appellants' assertion, we are not persuaded that the mere appearance of the name Cessna on the part raises an inference that it was the manufacturer of the part so as to create a triable issue of fact on the question.

Finally, appellants contend that Cessna should be accountable for the replaced vacuum pumps not as a manufacturer but on a failure to warn theory. Appellants claim that Cessna knew or should have known that the parts would not work and failed to issue any warning to aircraft owners or to the FAA. Cessna asserts this claim should fail as a transparent attempt to circumvent GARA by artful pleading. GARA's legislative history supports Cessna's position. ■■■ The House Judiciary Committee explained that the language "in its capacity as a manufacturer" is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic. (Legis. hist., 1994 U.S. Code Cong. & Admin. News, at p. 1649.) Cessna's position is also supported by the reasoning of *Alter* v. *Bell Helicopter Textron, Inc.* (S.D.Tex. 1996) 944 F.Supp. 531, which rejected an attempt by the plaintiffs to use a failure to warn theory to avoid GARA's limitation period. stating: "GARA also precludes the possibility that plaintiff could establish a cause of action under Texas law for

---

[1] Appellants do not claim that Cessna was the manufacturer of the vacuum pump replacement parts.

defective marketing or failure to warn against Bell based on allegedly misleading inspection instructions in the maintenance manual that [was issued fewer than 18 years before the accident]. . . ." (944 F.Supp. at p. 541.) Even though *Alter* involved an alleged failure to warn about an original defect rather than about a replacement part, we are still persuaded by its reasoning that the GARA limitation period may not be circumvented simply by labeling the claim as one for failure to warn. Appellants are still attempting to hold Cessna liable for actions connected with its role as manufacturer.

### 2) *Misrepresentation or Concealment Exception*

Appellants contend there was a triable issue of fact regarding the applicability of the knowing misrepresentation or concealment exception to GARA. The exception applies where a manufacturer with respect to the continuing airworthiness of an aircraft or component "knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the . . . operation of such aircraft, or the component . . . , that is causally related to the harm which the claimant allegedly suffered. . . ." (GARA, § 2, subd. (b)(1).)

Appellants rely on a National Transportation Safety Board (NTSB) report issued on March 5, 1982, containing Safety Recommendations Nos. A82-17 through A82-23. The report discusses accidents involving Cessna Model 210 planes and recommends that the FAA conduct further studies and issue directives about the vacuum pumps in the Cessna 210N aircraft. The report does not mention the Cessna model 310 aircraft that is at issue in this case.[2] The report states: "The FAA data suggest that failure of the pressure/vacuum pump is more likely in aircraft such as the Cessna Model 210N with deicing systems where a single high capacity pressure/vacuum pump is used for high-pressure, multipneumatic requirements." Much of the information in the report was obtained from the FAA and the report recommends that the FAA conduct further review and issue emergency directives relating to the Cessna 210N aircraft and the vacuum pumps produced by Airborne Manufacturing Company and Edo-Aire Manufacturing Company.

The report indicates concern by the NTSB and by the FAA regarding the failure rate of vacuum pumps manufactured by Airborne Manufacturing

---

[2]The Cessna Model 310R at issue in this case was a twin-engine, normally aspirated (not turbocharged) aircraft that was not equipped with any form of wing deicing system. The Cessna Model 210N, by contrast, was a single-engine aircraft equipped with only one Airborne Manufacturing Company Model 442CW vacuum pump powered by a turbocharged engine and was equipped with wing deicing systems.

Company. The concern, however, related to the failure rate in the Cessna 210N model, not the 310 model. The detailed review by the NTSB and recommendations made to the FAA for further study tend to defeat, not support, claims of misrepresentation and concealment by Cessna. The FAA appears to have been aware of safety issues relating to the vacuum pumps, and there is nothing indicating Cessna had further knowledge it was concealing. Accordingly, we conclude that appellants failed to raise any reasonable inference of knowing misrepresentation or concealment on the part of Cessna.

### 3) *Denial of Continuance*

Appellants finally contend that the trial court abused its discretion in denying their motion for a continuance for further discovery regarding the misrepresentation or concealment exception. The court denied the motion, stating that appellants had "failed to present any reasonable grounds for a continuance for discovery regarding the 'fraud' exception because the plane in question was a Cessna Model 310 and the NTSB 1982 and A-82-17 through -23 report is clearly related to very different Cessna Model 210." We agree. The court acted well within its discretion in denying a continuance. Cessna had complied with appellants' discovery requests, and there was no showing of reasonable grounds to believe further discovery would be productive.

### III. DISPOSITION

The order staying the action as to defendants Parker-Hannifin Corporation, Instrument Pro, Inc., and Brent's International, Inc., based on the doctrine of forum non conveniens is affirmed. The summary judgment in favor of Cessna Aircraft Company is also affirmed.

Haerle, J., and Lambden, J., concurred.

A petition for a rehearing was denied February 9, 1999, and appellants' petition for review by the Supreme Court was denied April 21, 1999. Mosk, J., was of the opinion that the petition should be granted.