Filed 1/6/25  Roy v. Robinson Helicopter Company CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL ROY,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>ROBINSON HELICOPTER COMPANY, INC.,<br><br>  Defendant and Respondent. | B330904<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV25235) |

_____

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Kristensen Law Group and John P. Kristensen for Plaintiff and Appellant.

Tim A. Goetz for Defendant and Respondent.

_____

Plaintiff and appellant Daniel Roy, personal representative of the Estate of Stéphane Roy, appeals the trial court's order granting defendant and respondent Robinson Helicopter Company's motion to stay the action on forum non conveniens grounds under Code of Civil Procedure section 410.30.[1] Roy and plaintiff Monique Longpré (plaintiffs),[2] who are Canadian citizens and residents, filed suit against Robinson after a helicopter that Robinson manufactured, designed, and sold, experienced a mechanical failure and crashed during flight in Quebec. The crash killed Stéphane Roy,[3] a Canadian citizen and resident who was piloting the helicopter. The helicopter was licensed and maintained in Canada. A Canadian governmental agency investigated the crash. We conclude the trial court did not abuse its discretion in concluding private and public interest factors weighed in favor of Quebec as the forum. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2021, plaintiffs filed suit against Robinson in the Superior Court of Los Angeles County, asserting claims of negligence, strict products liability, wrongful death, and breach of warranties in connection with the helicopter crash that killed the decedent. Roy was appointed the trustee of the Estate of

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

[2] Longpré is not a party to this appeal.

[3] Because Daniel and Stéphane Roy share the same last name, we refer to Stéphane Roy as the decedent.

2

Stéphane Roy by the Quebec Superior Court of Justice,[4] and Longpré is the decedent's mother. The complaint alleged that Robinson designs, manufactures, and sells the model R44 helicopter. Robinson also manufactured the rotor blades on this model of helicopter. The complaint alleged the rotor blades have an extensive history of debonding.

The model R44 helicopter at issue in this case was imported to Canada in December 2009. It was purchased by a company in which the decedent was a shareholder. On July 10, 2019, the helicopter experienced a mechanical failure and crashed during flight in Quebec, killing the decedent. Examination of the wreckage demonstrated that the rotor blades' rotational speed had dropped to a level insufficient to maintain flight. One of the rotor blades was found with multiple adhesive failures. The complaint alleged a "debonded rotor blade will cause significant vibrations during flight, making the helicopter incapable of continued safe flight." The complaint thus asserted the helicopter was defective.

In August 2022, Robinson moved to dismiss or stay the action based on forum non conveniens. It argued the decedent was a citizen and resident of Canada, the helicopter was imported to Canada when new, and a Canadian company had purchased it. Canada and the United States are contracting states to the Convention on International Civil Aviation, which provides that Canada has complete and exclusive sovereignty over airspace above its territory. As the state of registry, Canada also was responsible for determining whether the helicopter was airworthy and safe to fly. Moreover, the Canadian government established the pilot training and proficiency requirements cited

---

[4] The record indicates that Roy is also the decedent's brother.

3

throughout the Canadian government's investigative report on the crash, which Robinson included with its motion.

Robinson further contended that all evidence of the decedent's training and experience as a pilot is located in Canada. After the helicopter was located, the helicopter and accident investigation were placed under the jurisdiction and control of the Transportation Safety Board of Canada (TSB), which investigated the crash and issued a report reflecting its findings. According to the TSB report, although the decedent held a Canadian private pilot license, he had not renewed his medical certificate and thus was no longer authorized to fly. The decedent also violated Canadian aviation regulations by failing to file a flight plan or itinerary for the flight. As a result, the decedent's flight was not reported overdue until 23 hours after the accident. After local authorities were notified of the overdue aircraft, the Royal Canadian Air Force and Canadian Coast Guard initiated a large-scale aerial search that involved 18 aircraft, 44 observers, and 77 people on the ground. After 11 days, responsibility for the search transferred to the Surete du Quebec, which located the helicopter 14 days after it was reported missing in Quebec.

Although the complaint alleged that the decedent had no surviving issue, the TSB report stated there was a passenger on board whose safety harness appeared to be working properly but was found unfastened. The passenger's body was discovered 66 meters away from the helicopter wreckage. This led investigators to believe that the passenger survived a certain period of time after the impact, whereas the decedent did not.

4

The passenger was the decedent's 14-year-old son. Robinson asserted this raised issues of Quebec's simultaneous death laws.[5]

Robinson represented that it would make all documents concerning the United States Federal Aviation Administration (FAA) certification of the helicopter available in a Canadian proceeding, whereas plaintiffs could not compel numerous non-party Canadian witnesses who maintained the helicopter, participated in the search, and prepared the investigative report, to participate in a lawsuit in the United States.

In opposition to the motion, plaintiffs argued that the United States National Transportation Safety Board had issued recommendations after 10 cases of debonding were discovered in Robinson rotor blades. In response, the FAA issued an airworthiness directive requiring, among other things, inspection of the blades and their replacement by January 2020.[6] Pursuant to Canadian regulations, certain airworthiness directives issued by foreign regulatory authorities also have a mandatory effect in Canada. The FAA's airworthiness directive concerning the model R44 helicopter was mandatory in Canada. The TSB report stated that rotor blades on the helicopter at issue showed signs of

---

[5] Whether the decedent had any surviving issue was relevant because Longpré asserted standing pursuant to section 377.60. Under that provision, if a decedent has no surviving issue, a wrongful death cause of action may be asserted by "the persons . . . who would be entitled to the property of the decedent by intestate succession."

[6] As explained in the TSB report, "[a]n [airworthiness directive] is an instruction issued by a regulatory authority . . . after discovering a problem that compromises flight safety and requires mandatory maintenance and/or operational action as a corrective and/or preventive measure."

debonding.  Robinson appealed the TSB report.  As part of that process, the TSB sent the report to the Australian Air Investigative Board for review, which confirmed the TSB's results.  Plaintiffs thereafter retrieved the wreckage and transferred it to Delaware for inspection.  A subsequent inspection took place in Georgia.  Both inspections confirmed there was visual evidence of debonding.

Plaintiffs conceded that Quebec was a suitable alternative forum.  However, they argued that the most relevant evidence in this products liability action would be documents concerning design, and the testimony of people involved in the design, testing, and manufacture of the helicopter.  These documents and witnesses are located in California.  Plaintiffs also asserted that in Quebec, they would be unable to subpoena third parties involved in the manufacture of the engine and component parts.  They further argued that FAA personnel were percipient witnesses because the FAA was responsible for the certification of the aircraft.  They argued these witnesses, located in Washington D.C., Texas, and California, were also beyond the reach of the Quebec courts.  Plaintiffs also claimed they would seek discovery from Robinson sales centers in California.  The wreckage was located in the United States and plaintiffs' experts are United States residents.  Plaintiffs disputed that the TSB investigators could be called as witnesses under Canadian law.  They also contended that the Canadian service centers that performed maintenance on the helicopter were Robinson-authorized service centers and thus would likely voluntarily provide information in a California action.

The trial court concluded that Quebec, Canada is a suitable and available forum.  It further concluded that the private

interest factors of the parties supported granting the motion. The court observed that the jurisdiction of a defendant's residency is presumptively a convenient forum, but the presumption is not conclusive, and a foreign plaintiff's choice of forum is not a substantial factor in favor of retaining jurisdiction. The court concluded the private interest factors weighed in favor of Quebec "because of the location of the accident, witnesses, and evidence pertaining to damages." Documents concerning the design and manufacture of the helicopter could be shipped to Canada. Robinson had agreed to make documents available for inspection in Canada and its employees available for testimony, subject to the discretion of the Canadian court. The court also observed that the Canadian owner of the helicopter and the Canadian mechanics who serviced it are beyond the reach of California courts and Robinson would be unable to cross-complain against these potential defendants.

The trial court also found the public interest factors weighed in favor of Quebec because the accident occurred in Canada and plaintiffs are Canadian residents. Although the court recognized California's public interest in ensuring that products produced within the state are not defectively designed or manufactured, it concluded that interest was outweighed by Canada's public interest in adjudicating claims brought by its citizens for the death of its citizens traveling on an aircraft within its airspace and subject to its regulations.

The court therefore granted the motion and stayed the action until a case was filed in Canada. It ordered that Robinson: (1) submit to the jurisdiction of Quebec, Canada; (2) agree to comply with discovery orders there; (3) make past and present employees reasonably available to testify in Quebec, at its cost, if

7

so ordered, within the discretion of the Quebec courts; (4) agree to the tolling of the statute of limitations during the pendency of this action in California; (5) agree to make documents in its possession in the United States available for inspection in Quebec, as required by Quebec law, at its expense; (6) agree to depositions in the United States; and (7) agree to pay any final judgment rendered in the Quebec action.

Roy timely appealed.

## DISCUSSION

### I. Applicable Legal Standards

#### A. Forum Non Conveniens

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (§ 410.30, subd. (a).)

"In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern,

8

and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*), citing *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 259–261 (*Piper*).) "The trial court has great flexibility in weighing [the private and public interest] factors; no one factor is determinative." (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 701 (*Guimei*).)

In *Piper*, a small commercial aircraft crashed in the Scottish highlands, killing the pilot and five passengers.[7] (*Piper*, *supra*, 454 U.S. at pp. 238–239.) The decedents were Scottish subjects and residents, as were their heirs and next of kin, and the plane was subject to Scottish air traffic control. (*Id.* at p. 239.) The manufacturers of the aircraft and its propellers were located in Pennsylvania and Ohio, respectively, while British companies owned and operated the plane. (*Ibid.*) The wreckage was stored in England and the British Department of Trade investigated the accident. (*Ibid.*) The administratrix of the decedents' estates filed an action against the plane and propeller manufacturers in the United States "because its laws regarding liability, capacity to sue, and damages are more favorable to her position than are those of Scotland." (*Id.* at p. 240.) The defendants moved to dismiss on forum non conveniens grounds and the district court granted their motions. (*Id.* at p. 241.) The court of appeals reversed. (*Id.* at p. 244.)

---

[7] Federal law concerning forum conveniens is instructive because "both the California and United States Supreme Courts have recognized [it] is 'virtually identical' to California law." (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 438 (*American Cemwood Corp.*), quoting *Piper*, *supra*, 454 U.S. at p. 248, fn. 13, and *Stangvik*, *supra*, 54 Cal.3d at p. 754, fn. 6.)

9

The United States Supreme Court reversed again. It first concluded that "[t]he Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of forum non conveniens merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." (*Piper, supra,* 454 U.S. at p. 247.) Because "there is no danger that they will be deprived of any remedy or treated unfairly [in Scotland]," the favorability of United States law was not entitled to substantial weight. (*Id.* at p. 255.) The Supreme Court also held that the district court correctly concluded that the presumption in favor of a plaintiff's choice of forum applies with less force when the plaintiff or real parties in interest are foreign (*id.* at pp. 255–256), and the court of appeals erroneously substituted its own judgment for that of the district court when balancing the private interests. (*Id.* at p. 257.) Although "records concerning the design, manufacture, and testing of the propeller and plane [were] located in the United States," the Supreme Court held that "the District Court did not act unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland," as "[a] large proportion of the relevant evidence [was] located in Great Britain." (*Id.* at pp. 257–258.) Moreover, "[t]he District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland." (*Id.* at p. 259.)

The Supreme Court similarly found the district court's review of the factors relating to the public interest to be reasonable. (*Piper, supra,* 454 U.S. at pp. 259–260.) The Supreme Court noted that "Scotland has a very strong interest in this litigation" because "[t]he accident occurred in its airspace";

10

"[a]ll of the decedents were Scottish"; and "[a]part from [the manufacturer defendants], all potential plaintiffs and defendants are either Scottish or English." (*Id.* at p. 260.) Although the administratrix of the decedents' estates argued "that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products," the Supreme Court determined that "the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant" and "[t]he American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried [in the United States]." (*Id.* at pp. 260–261.)

In *Stangvik*, the plaintiffs were family members of two men residing in Norway and Sweden who received heart valve implants in their countries of residence. A California corporation, Shiley Incorporated (Shiley), designed and manufactured the valves in California. (*Stangvik, supra,* 54 Cal.3d at p. 749.) After the valves allegedly failed and both patients died, the plaintiffs filed suit in California against Shiley and its parent company alleging the valves were defective. (*Ibid.*) The trial court dismissed the action on forum non conveniens grounds. The Court of Appeal affirmed, as did the California Supreme Court. (*Id.* at p. 750.)

Our high court concluded that Sweden and Norway were suitable alternative forums where "[d]efendants stipulated that they would submit to jurisdiction in Sweden or Norway, respectively, as well as to the tolling of the statute of limitations during the pendency of the actions in California." (*Stangvik, supra,* 54 Cal.3d at p. 752.) Turning to the private interests of

11

the parties, the *Stangvik* court noted that "*Piper* holds that the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed." (*Id.* at p. 755.) "At best, therefore, under the rule laid down in *Piper*, the fact that plaintiffs chose to file their complaint in California is not a substantial factor in favor of retaining jurisdiction here." (*Ibid.*) Although Shiley was a California corporation, and California was thus a "presumptively a convenient forum" (*ibid.*), "[*Piper*], and other authorities make clear[ ] [that] this presumption is not conclusive. . . . A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action." (*Id.* at p. 756.)

Our Supreme Court next "consider[ed] the interests of the California public in retaining the trial of the actions in this state" and noted that "*Piper* held that the jurisdiction with the greater interest should bear the burden of entertaining the litigation." (*Stangvik*, *supra*, 54 Cal.3d at p. 757.) It concluded the Court of Appeal in the case before it had "observed correctly that preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Id.* at p. 758.) Foreign defendants had filed over a hundred cases against Shiley in California courts. (*Ibid.*) Our high court was "persuaded that . . . the additional deterrence that would result if defendants were called to account for their allegedly wrongful conduct in a California court rather than in the courts of Scandinavia would be negligible." (*Id.* at p. 759.) At least some of the 235 cases pending against Shiley in California were likely brought by California residents, thus "[t]he burden imposed on defendants in trying these cases by California

residents in the California courts, and the damages that defendants might be required to pay if they are found liable, would provide sufficient deterrence to prevent wrongful conduct in the future even if the suits filed by nonresident plaintiffs were tried elsewhere." (*Ibid.*)

The court concluded "there was clearly substantial evidence to sustain the trial court's determination that the balance of private and public interests favors defendants under traditional rules laid down in prior cases." (*Stangvik*, *supra*, 54 Cal.3d at p. 762.) Although "much, but not all, of the evidence concerning liability exist[ed] in California," "virtually all the evidence relating to damages [was] in Scandinavia." (*Ibid.*) The defendants had promised to supply the documents in their possession if the Scandinavian courts ordered them to be produced. (*Ibid.*) Moreover, "[t]he public interest factors clearly favor defendants' position." (*Id.* at p. 763.) A holding that the cases before the court could be tried in California would mean all of the hundreds of cases filed by foreign plaintiffs against the defendants likely would be tried in California, placing a considerable burden on the California courts. (*Ibid.*) "California's interest in deterring future improper conduct by defendants would be amply vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor." (*Ibid.*)

## B.     Standard of Review

"Just as the trial court's determination of a forum non conveniens motion is a two-step process, review of that determination requires two separate steps.  First, we determine whether substantial evidence supports the trial court's finding as to whether a suitable alternative forum exists.  [Citation.]  In

13

making this determination, there is no balancing of interests or exercise of discretion. [Citation.] [¶] Second, we review the trial court's determination on balancing private and public interests for abuse of discretion. [Citation.] We 'will only interfere with a trial court's exercise of discretion where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result. [Citation.] "[A]s long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside . . . .' " [Citation.]' [Citation.]" (*Guimei*, *supra*, 172 Cal.App.4th at p. 696.)[8]

## II.    Roy Does Not Challenge the Trial Court's Determination that Quebec Is a Suitable Alternative Forum

Even though the suitability of the alternative forum is a "*'nondiscretionary determination'* " (*American Cemwood Corp.*, *supra*, 87 Cal.App.4th at p. 436), and our review is de novo, " '[w]e must presume the judgment is correct . . . .' [Citation.]" (*Allen v. Liberman* (2014) 227 Cal.App.4th 46, 53.) " ' "[I]t is the appellant's responsibility to affirmatively demonstrate error . . . In other words, review is limited to issues which have been adequately raised and briefed." [Citation.]' [Citation.]" (*Ibid.*) While Roy observes that Quebec places limits on pretrial discovery that do not exist in California, he does not challenge the trial court's determination that Quebec was a suitable alternative forum. Thus, we presume the trial court correctly

---

[8]    In applying the abuse of discretion standard in *Stangvik*, our Supreme Court considered whether the trial court's factual findings were supported by substantial evidence. (*Stangvik*, *supra*, 54 Cal.3d at pp. 754, 762–763.)

14

concluded that Quebec is an adequate alternative forum and we proceed to the discretionary prongs of the forum non conveniens analysis.

## III. The Trial Court Did Not Abuse Its Discretion in Balancing the Private and Public Interests

Roy contends the trial court abused its discretion because the private and public interest factors favor California and the trial court "ignored the evidence presented." Robinson argues that Roy fails to demonstrate that the trial court's decision was unsupported by substantial evidence and improperly seeks de novo review. We find no abuse of discretion.

### A. Private interest factors

The trial court did not abuse its discretion when it concluded that Robinson's status as a California corporation did not compel the court to deny the motion. Although "the state of [a defendant's] incorporation and the place where its principal place of business is located is presumptively a convenient forum" (*Stangvik*, *supra*, 54 Cal.3d at p. 755), both *Stangvik* and *Piper* recognized that this presumption is not conclusive. (*Id.* at p. 756.) Likewise, the court did not abuse its discretion in concluding that plaintiffs' choice of California as the forum "is not a substantial factor in favor of retaining jurisdiction here." (*Id.* at p. 755.) Plaintiffs are citizens and residents of Canada. "[T]he forum choice of a *foreign* plaintiff is not entitled to a presumption of convenience." (*Fox Factory, Inc. v. Superior Court* (2017) 11 Cal.App.5th 197, 205; accord, *Guimei*, *supra*, 172 Cal.App.4th at p. 702 [foreign plaintiffs' choice of California as the forum was "of little consequence" and entitled to less deference].)

The trial court concluded the private interest factors weigh in favor of Quebec, "largely because of the location of the

15

accident, witnesses, and evidence pertaining to damages," and because Robinson agreed to provide documents regarding the design and manufacture of the helicopter and to make its employees available to testify. The court also considered that the owner of the helicopter and the mechanics that serviced it would be beyond the reach of California courts. This, too, was reasonable based on the evidence. The evidence in *Stangvik* was similar: much of the liability evidence was in California, but nearly all of the damages evidence was in Scandinavia, and the defendants had promised to supply the documents in their possession if required by the Scandinavian courts. (*Stangvik, supra*, 54 Cal.3d at p. 762; see also *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 (*Campbell*) [balance favored granting motion for stay in action involving airplane crash in Australia where "[v]irtually all of the evidence relating to damages is in Australia, and the evidence relating to the design and manufacture of the airplane is in the United States"].)

Roy contends the private interest factors favoring California strongly outweigh those favoring Quebec because "[t]he most relevant evidence in this products liability case are the documents and people concerning the design, testing and manufacture of the helicopter," which are located in California. However, as *Stangvik* and *Campbell* establish, the presence of design or manufacturing evidence in California does not compel the conclusion that the private interest factors favor California. Roy does not dispute that damages evidence is located in Canada but claims that he "would secure any damages witnesses Robinson would want to call or depose." Yet, he does not claim that all relevant damages witnesses are within his control, nor does he explain what mechanism would be available to secure

16

those witnesses if the matter is tried in California and the witnesses are unwilling to cooperate.

Further, the record establishes that after the initial sale, the helicopter was located, licensed, and managed in Canada. There is no indication in the helicopter's maintenance log that it was ever serviced outside of Canada in the decade preceding the accident. Roy does not dispute that the relevant maintenance centers are beyond the reach of California courts. He instead contends that Robinson presented no evidence that its affiliated service centers in Canada would not cooperate. However, there is no evidence such service centers are owned by Robinson or operate under Robinson's control. Rather, an exhibit submitted below, which reflects a page on Robinson's website listing international dealers and service centers, states prominently: "All Dealers and Service Centers are independently owned and operated, and are not agents of Robinson Helicopter Company." Considering that Robinson has argued that these service centers may bear some fault for the accident, the trial court could reasonably question whether these third parties would voluntarily participate in a California action.[9]

---

[9]      Roy contends that the availability of persons who maintained the helicopter does not weigh in favor of trying the case in Quebec because the TSB investigators concluded maintenance was not a factor in the crash. Yet, he also argues that the government investigators who prepared the TSB report could not be called as witnesses in a Quebec action and their opinions are inadmissible, thus their presence in Canada does not weigh in favor of that forum. This would suggest the testimony of other individuals who have knowledge of the helicopter's maintenance may, in fact, be necessary. In any event, the

17

In support of his claim that the trial court should not have given any weight to Robinson's arguments concerning the unavailability of foreign witnesses in a California action because Robinson did not name specific witnesses, Roy cites an unpublished Rhode Island trial court decision, *Melford v. Abex Corp.* (R.I.Super.Ct., Dec. 4, 2012, No. PC 11-1172) 2012 R.I.Super.LEXIS 179 (*Melford*), and an Illinois Court of Appeals decision, *Erwin v. Motorola, Inc.* (2011) 408 Ill.App.3d 261 (*Erwin*). These decisions are not binding on this court and are distinguishable on their facts.

*Melford* involved a motion by the *plaintiffs* to stay a Rhode Island action in favor of a parallel action they filed in Louisiana. (*Melford, supra*, 2012 R.I.Super.LEXIS 179 at p. *1.) Although the trial court recognized that it "lack[ed] the power to subpoena witnesses living in Louisiana," it noted that "both Plaintiffs and Defendants have already deposed numerous witnesses domiciled outside Rhode Island, and there is no evidence to suggest that continuing with this practice will be too burdensome or costly in the future." (*Id.* at p. *18, fns. omitted.) There is no comparable evidence here. In *Erwin*, the appellate court held that the trial court did not err in *denying* a motion to dismiss on forum non conveniens grounds where the moving party failed to specify any

Canadian law Roy cites in support of his claim, the Transportation Accident Investigation and Safety Board Act, Statutes of Canada 1989, chapter 3, section 32, states that investigators *may* be called if "the court or other person or body before whom the proceedings are conducted so orders for special cause." Robinson also argued below that under Canadian law it would seek admission of the TSB report and the testimony of its investigators to establish the facts of the investigation, rather than for the opinions expressed in the report.

18

foreign witness who would be unwilling to testify in the current forum.  Although the *Erwin* court declined "to speculate about a witnesses' [*sic*] whereabouts or unwillingness to testify at trial," it further observed that transferring the case to the alternative forum would not prove more convenient, as the most relevant third-party witnesses did not reside in the alternative state, and therefore may have been beyond the alternative court's reach. (*Erwin*, *supra*, 408 Ill.App.3d at pp. 277, 278.)  Roy does not similarly contend that the Canadian residents who performed maintenance on the helicopter are beyond the reach of the Quebec courts.

Moreover, in *Piper*, the United States Supreme Court rejected the appellate court's reasoning that "problems of proof could not be given any weight because [the defendants] failed to describe with specificity the evidence they would not be able to obtain if trial were held in the United States." (*Piper*, *supra*, 454 U.S. at p. 258.)  The appellate court had suggested that defendants "must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." (*Ibid*.)  The high court stated that "[s]uch detail is not necessary" and the defendants had "moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview." (*Ibid*.)  Similarly, in *Stangvik*, the California Supreme Court "did not require an extensive evidentiary showing." (*Campbell*, *supra*, 69 Cal.App.4th at p. 1542; see also *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1462 ["Plaintiffs present no authority for a requirement of particularized affidavits in forum non conveniens cases.  We have found none."].)  Roy does not cite any California

19

decisions requiring that the unavailability of potential foreign witnesses be established by affidavit.

Roy further argues that he would seek discovery from some or all of Robinson's sales and service centers in California on the debonding issue and the FAA airworthiness directive. He does not identify what information about the FAA airworthiness directive these sales or service centers would possess that Robinson would not. Moreover, it is unclear why such information would be more pertinent to the action than information in the possession of sales and service centers in Canada, where the helicopter was sold and serviced. Roy further contends that FAA materials concerning the airworthiness of the aircraft and witnesses from the FAA are "percipient," and FAA offices and personnel are located in Washington D.C., Texas, and California. While the presence of relevant evidence in California may weigh against the trial court's determination, that relevant evidence " 'may be located elsewhere in the United States does not make [California] a convenient forum.' [Citation.]" (*Guimei*, *supra*, 172 Cal.App.4th at p. 702.)[10] Roy asserts that he would seek to depose Lance T. Gant, the FAA's acting Directorate Manager, Rotorcraft Directorate, Aircraft Certification, but he cites no evidence that Gant is a resident of California. Indeed, plaintiffs conceded below that Gant is located in Texas.

---

[10] Roy also argues that plaintiffs' experts, the helicopter wreckage, and the maintenance and journey logs are located in the United States. He does not claim that these experts or this evidence are located in California or that plaintiffs would be unable to make the witnesses and evidence available in an action in Quebec.

20

Significantly, Robinson represented that it would make all relevant documents relating to the R44 helicopter and its components, including documents relating to FAA certification, available in a Canadian proceeding. The trial court granted the motion on the express condition that Robinson agree to make documents in its possession in the United States available for inspection. Roy cites no authority to support his claim that the existence of a FAA airworthiness directive concerning an aircraft outweighs the fact that the lawsuit is brought by foreign plaintiffs and concerns an accident that occurred in a foreign country, involved a foreign decedent, and was investigated by a foreign body. (See *Nai-Chao v. Boeing Co.* (N.D. Cal. 1982) 555 F.Supp. 9, 12, fn. 4 [existence of FAA airworthiness directive, "though relevant for purposes of establishing a *prima facie* case of defect," did not affect court's analysis of forum non conveniens question].)

Roy also contends that the cost to the parties of translating documents into French, the official language of Quebec, would be "prohibitive" and weighs against the trial court's conclusion that the private interest factors favor Quebec. He asserts that in Quebec, "[t]here is a mandate that all proceedings must be in French or accompanied by a certified French translation." However, plaintiffs' legal expert's declaration stated only that a recently adopted statute, Statutes of Quebec 2022, chapter 14, requires that "all *pleadings* emanating from a legal person that are filed before the courts of Quebec must be either drafted in French or accompanied by a certified French translation." (Italics added.) Plaintiffs' expert did not define the term "pleadings" and Roy does not otherwise establish that it would encompass evidence like "the Robinson records, FAA records,

21

expert reports and materials, maintenance records, and any deposition transcripts," as he claims. Moreover, plaintiffs' expert explained that the Superior Court of Quebec suspended this mandate in *Mitchell v. Quebec* (*Attorney General*) (2022) 2022 QCCS 2983, in the context of proceedings challenging its constitutional validity.[11] He acknowledged "it is however impossible at this stage to determine whether this decision is likely to be reversed on appeal, or how long this suspension would last." In the absence of evidence or authority indicating that a Canadian court has since reinstated the mandate, Roy fails to support his contention that a Quebec court would or could require that all case materials be translated into French.

Finally, we disagree that *Hubei Gezhouba Sanlian Indus. Co. v. Robinson Helicopter Co.* (C.D.Cal. Mar. 22, 2007) 2007 U.S. Dist. LEXIS 106122, reversed (9th Cir. 2008) 287 Fed.Appx. 599, demonstrates that Robinson would not honor a Canadian judgment. In 1995, a California Superior Court stayed on forum non conveniens grounds an action Chinese plaintiffs brought concerning a R44 helicopter crash in China, subject to Robinson waiving the statute of limitations. The plaintiffs unsuccessfully re-filed the action in several forums in China until, in 2001, they successfully re-filed the action in a Chinese court and obtained a default judgment. (*Hubei*, 2007 U.S. Dist. LEXIS 106122 at pp. *4–8.) Robinson claimed it was never served with any documents related to the re-filed 2001 action. (*Id*. at p. *7.) The Central District of California determined that enforcement of the

---

[11] "[T]he Canadian Constitution provides that either French or English may be used in the courts of Quebec." (*Straub v. A P Green, Inc.* (9th Cir. 1994) 38 F.3d 448, 453, fn. 3, citing Can. Const. (British North America Act, 1867), § 133.)

Chinese judgment would be contrary to California public policy and general principles of equity since the plaintiffs conceded that the relevant statute of limitations in China was two years. (*Id*. at p. \*13.) The Ninth Circuit Court of Appeals reversed because the California action was stayed, not dismissed, and the tolling agreement was in place when the action was re-filed in 2001. (*Hubei*, 287 Fed. Appx. at p. 600.) There was no finding in *Hubei* that Robinson acted in bad faith. Moreover, plaintiffs raised this issue before the trial court and there is no indication that the court found that it impacted Robinson's credibility. We will not revisit the trial court's credibility determinations. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786.)

In sum, the trial court's conclusion that the private interest factors weighed in favor of trying the action in Quebec was supported by substantial evidence and was reasonable under the circumstances.

### B.    Public interest factors

The trial court concluded California's public interest in ensuring that products produced within the state are not defectively designed or manufactured was outweighed by Canada's public interest in adjudicating claims brought by its citizens, for the death of its citizens traveling on an aircraft within its airspace, and subject to its regulations. The court further observed: "Canada controls its airspace and dictates the training and license requirements for its pilots; the helicopter was flying under Canadian registration and regulations within Canadian airspace; and the accident was investigated by Canadian authorities."

This conclusion was reasonable and supported by substantial evidence. "*Piper* held that the jurisdiction with the

23

greater interest should bear the burden of entertaining the litigation." (*Stangvik*, *supra*, 54 Cal.3d at p. 757; *Piper*, *supra*, 454 U.S. at p. 260 ["there is 'a local interest in having localized controversies decided at home' "].)  Like the trial court here, the court in *Piper* weighed Scotland's interest in litigation arising from a plane crash within its airspace that killed residents of Scotland against "the incremental deterrence that would be gained if this trial were held in an American court . . . ."  The *Piper* court concluded that the public interest factors favored Scotland.  (*Piper*, at pp. 260–261.)

Roy contends the local community in California has a keen interest in this matter.  He relies on Los Angeles Times articles discussing crashes involving Robinson-manufactured helicopters in Southern California.  To the extent these articles constitute admissible evidence, we do not agree that they support Roy's contention that California's interest in the crash at issue so far exceeds that of Canada that a reasonable court could not have ruled as the trial court did.  The articles mention at least one lawsuit involving a fatal crash of a model R44 helicopter in California, as well as "about a dozen lawsuits" a Los Angeles firm has filed, presumably in California, alleging that Robinson helicopters contain design defects.  As in *Stangvik*, "[t]he burden imposed on defendants in trying these cases by California residents in the California courts, and the damages that defendants might be required to pay if they are found liable, would provide sufficient deterrence to prevent wrongful conduct in the future even if the suits filed by nonresident plaintiffs were tried elsewhere." (*Stangvik*, *supra*, 54 Cal.3d at p. 759.)

Citing a decision from the Ninth Circuit Court of Appeals, Roy contends that this court should weigh "the interest in trying

the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Monegro v. Rosa* (9th Cir. 2000) 211 F.3d 509, 512.)  Roy argues that California law would apply to plaintiffs' claims for manufacturer liability.  In *Campbell*, a California Court of Appeal rejected the contention "that determination of which jurisdiction's laws apply is a relevant consideration in determining whether to apply forum non conveniens . . . ." (*Campbell*, *supra*, 69 Cal.App.4th at p. 1543.)  The *Campbell* court observed that the cases on which the plaintiff in that case relied in making this claim "state only that avoidance of a choice-of-law question is not necessarily a reason for applying forum non conveniens." (*Ibid*.)

In any event, even if Roy is correct, Robinson presented evidence that the decedent was survived by his son for some period of time, and argues that plaintiff Longpré's claim that she had standing pursuant to section 377.60 raises issues of Quebec's simultaneous death rules to determine intestate succession.  Roy does not address this contention.  Although we recognize that "[Canada] has a significant interest in . . . overseeing the intestate succession of [Canadian] decedents" (*Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 902), we need not decide this choice-of-law issue.  It is sufficient to observe that Roy has not established that choice-of-law considerations would weigh solely in favor of a California forum.

The other decisions on which Roy relies also do not compel the conclusion that the trial court abused its discretion.  In *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 607, the plaintiff, a corporation with its principal place of business in Michigan, sought to establish its right to insurance coverage for liabilities arising from the

environmental contamination of three plant sites in California. The Court of Appeal concluded that the trial court erred in dismissing the action on forum non conveniens grounds.  With respect to the private interest factors, it rejected the defendants' contention that "the underlying facts involve nothing more than the negotiation, formation, performance and their alleged breach of insurance contracts," all of which took place outside California. (*Id*. at p. 612.)  Defendants had asserted an affirmative defense that the plaintiff failed to disclose known risks when obtaining its policies.  (*Ibid*.)  The court observed that "[p]laintiff's knowledge of the pollution of the sites and whether it was 'expected or intended' depends largely, if not entirely, on the knowledge of its on-site California employees."  (*Ibid*.)  Thus, California "ha[d] a significant relationship to the underlying facts."  (*Ibid*.)  It further observed that "California . . . has a fundamental interest in the preservation of the quality of its natural environment and in the remediation of toxic contamination within its borders." (*Id*. at p. 614.)  Turning to the public interest factors, the court observed that the case would be linked to 150 other matters if tried in Michigan, whereas it had been assigned to a fast track program in California, which indicated that it could be tried expeditiously.  (*Id*. at p. 615.)  The court concluded that "California has a substantial interest in regulating the conduct at issue in this case" and "[t]he burden imposed on California courts thus will not be disproportionate to the state's relationship to the cause of action, and jury duty will not be imposed on a community unrelated to the case." (*Id*. at p. 616.)  The facts here are significantly different and the *Ford* court's conclusions are not equally applicable.

26

*Roulier v. Cannondale* (2002) 101 Cal.App.4th 1180 (*Roulier*), is also distinguishable.  In *Roulier*, the plaintiff, a Swiss resident, purchased one of the manufacturer defendant's bicycles while visiting California.  (*Id.* at p. 1183.)  He was later seriously injured while riding the bicycle in Switzerland.  (*Ibid.*)  The Court of Appeal reversed the trial court's order granting the defendant's motion to dismiss on forum non conveniens grounds.  (*Ibid.*)

The court observed that "percipient and expert witnesses and documents regarding the design, production, testing, warranty, and sale of the bicycle are in California or may be compelled to testify or to be produced here."  (*Roulier*, *supra*, 101 Cal.App.4th at p. 1189.)  Although "the surviving percipient witness, the treating physicians, and the medical records are in Switzerland," the court concluded that the private interest factors favored California because the plaintiff had provided "his medical records, made himself available for medical examination here, and has stipulated to video depositions of any medical witnesses in Switzerland."  (*Ibid.*)

The court in *Roulier* appeared to place significant weight on the fact that the plaintiff stipulated to video depositions of medical personnel and the sole percipient witness in Switzerland. In contrast, Roy does not represent that he could make all damages witnesses or the third parties who maintained the helicopter or investigated the helicopter crash available in a California action.  Moreover, the helicopter at issue here was purchased and maintained in Canada.  There was no discussion in *Roulier* of any maintenance performed in Switzerland, nor is there any indication in the opinion that the bicycle accident was the subject of an investigation by Swiss authorities or that those

authorities made any determination of the cause of the accident. Although a local community's interest in a bicycle accident may be relatively insubstantial, the United States Supreme Court has recognized that a local community's interest in accidents involving its citizens in its airspace is "very strong." (*Piper*, *supra*, 454 U.S. at p. 260.)

Finally, a trial court's denial of Robinson's motion to stay or dismiss for forum non conveniens in an unrelated case, *Cabrera v. Robinson Helicopter* (Aug. 28, 2018, BC514477) 2018 Cal. Super. 11544, does not assist us in determining whether the trial court here abused its discretion. "[A] written trial court ruling has no precedential value." (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761 [denying request for judicial notice of a minute ordered issued in an unrelated case]; accord, *In re Molz* (2005) 127 Cal.App.4th 836, 845 ["trial court decisions, of course, have no precedential authority"].) Roy offers no basis for us to consider a superior court ruling in another matter involving the same defendant but a different alternative forum (as to which significant doubts regarding suitability were raised) and distinguishable facts.

The trial court was well within its discretion in concluding both the private and public interest factors favored trying the case in Quebec.

## DISPOSITION

The trial court's order is affirmed.  Robinson shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


EDMON, P. J.


EGERTON, J.